## HOLLIDAY et al. v. ERWIN.

### No. 9624.

Court of Civil Appeals of Texas. San Antonio.

July 1, 1935.

Rehearing Denied Aug. 14, 1935.

Johns, McCampbell & Snyder and I. W. Keys, all of Corpus Christi, for plaintiffs in error.

Boone, Henderson, Boone & Davis, of Corpus Christi, for defendant in error.

MURRAY, Justice.

This suit was instituted by defendant in error, A. C. Erwin, to cancel a release or receipt for the sum of $10,000, alleged to have been executed by him as a result of duress and fraud. He also sought a decree declaring him to be the owner of one-fourth of seven-eighths of the first oil produced from a well upon a certain 50 acres of land located in Nueces county, Tex., or from any other well, or wells, that might be drilled upon said 50 acres of land, until the full sum of $16,250 had been paid to him. Plaintiffs in error are A. F. Holliday, Bendum & Trees, Inc., and J. C. Trees. They are all nonresidents of the state of Texas. They were served in this case by notice to serve nonresidents. They did not appear herein, and judgment by default was entered against them by the trial judge canceling the purported re-

ceipt for $10,000, and further decreeing that Erwin is the owner of and is entitled to receive one-fourth of seven-eighths of the first oil produced from the said 50 acres of land until the full sum of $16,250 has been paid to him therefrom.

Plaintiffs in error present but one assignment of error, which is as follows: "The judgment rendered by the trial court in favor of defendant in error against plaintiffs in error is erroneous because it is a judgment in personam against non-residents of this State upon service had without the State."

■ It is quite clear that a suit to cancel a release of this nature is an action in personam and cannot be maintained against nonresident defendants served only by notice to nonresidents.

The only difficult question is whether or not the fact that Erwin prayed in his petition that he be decreed to be the owner of a one-fourth of seven-eighths interest in the oil produced from the 50 acres described in his petition, and the further fact that such relief was granted to him, would be sufficient to render this a suit in rem or quasi in rem, so as to make it maintainable against nonresident defendants served only by out of state process.

■ The pertinent part of the assignment executed by Erwin is as follows:

"Now, therefore, for and in consideration of the sum of Five hundred and No/100 dollars ($500.00) cash in hand paid, the receipt of which is hereby acknowledged, and the further sum of sixteen thousand two hundred fifty and No/100 dollars ($16,250.00) payable out of one-fourth (1/4th) of seven-eighths (7/8ths) of the first oil only as, if and when produced, saved and sold from the above described land, which sum is exclusive and in addition to the sum of seventy-five and No/100 dollars ($75.00) per acre payable to the original lessor under the terms of the original lease, the undersigned, the present owner of said lease and all rights thereunder or incident thereto, does hereby bargain, sell, transfer, assign and convey all rights, title and interest of the original lessee and present owner in and to said lease and rights thereunder, insofar as it covers the above described land, together with all personal property used or obtained in connection therewith to Walter D. Caldwell and his heirs, successors and assigns."

It is clear to our minds that in this assignment Erwin conveyed all rights, title, and interest which he held in said 50 acres of land for the consideration of $500 in cash and the further conditional promise to pay him the sum of $16,250, payable out of one-fourth of seven-eighths of the first oil, only, as, if, and when produced, saved, and sold from said 50 acres of land. The assignment does not contain a provision that Erwin is entitled to receive one-fourth of seven-eighths of the first oil produced, nor does it contain a provision that the title to such oil shall remain in Erwin until he is paid. He simply conveys all his rights in the lease for so much cash and a conditional promise to pay $16,250.

■ Regardless of this, however, this suit is primarily a suit to cancel this purported receipt for $10,000. The fact that Erwin asked for a decree declaring what his rights would be after the purported receipt was canceled would not change the nature of the suit. It is apparent that there is no controversy between the parties except as to the validity of this receipt. If the receipt was valid, Erwin could collect nothing further under the assignment, as he had been theretofore paid approximately $6,250. If the receipt was invalid, Erwin would be entitled to receive payment of $10,000 more, and would be entitled to receive it under the terms of the assignment.

The court decreeing what Erwin's rights were under the lease after the cancellation of the receipt would be merely an incidental matter. The decree would have to be based upon the provisions of the assignment, as there was no attack made upon the assignment and no attempt made to nullify any of its provisions.

In other words, the only issue presented by the pleadings and the evidence was the cancellation of the receipt on the grounds of fraud and duress, which clearly constituted a suit in personam not maintainable against nonresident defendants served only by out of state process.

Accordingly, the judgment of the trial court will be reversed and the cause remanded.

On Motion for Rehearing.

Defendant in error has filed a motion for rehearing in which he contends that our decision is in conflict with Sheffield v. Hogg (Tex. Sup.) 77 S.W.(2d) 1021, 1022,

wherein we held that appellee did not own an interest in real estate after executing the assignment of the lease to Caldwell. We cannot agree with this contention. In the Hogg Case the lease contained the following provision, to wit: "Fifth: (a) In consideration of this lease second party agrees that first parties shall have the following royalty of the gross production of all oil or gas wells on said lands, to-wit: one-eighth of all oil and one-eighth of all gas; and first parties' one-eighth royalty interest in all oil and gas marketed from said land to be paid over to them by second party at the end of each month, or whenever second party shall receive pay therefor, such royalty to be delivered by second party to the credit of first parties in any pipe-line or pipe-lines which said first parties may designate, and which connect with the wells or connect with the settling tanks of second party, free of any charge to first parties, or into said first parties' own private storage upon said land, or upon their other land adjoining, at the expense of said first parties; and first parties shall have one-eighth interest in all money realized from gas marketed from said land, as a royalty to be paid over to them, or their order, at the end of each month, or whenever second party shall receive pay therefor."

No similar provision is found in defendant in error's assignment of his lease. Defendant in error was not to receive anything as rents or royalty; he was to receive purchase money.

It occurs to us that what defendant in error had under his assignment was a covenant provision to be paid $16,250 out of one-fourth of seven-eighths of the oil produced from the land, and that this covenant would run with the land and be binding on subsequent purchasers who bought with knowledge of the covenant.

However, whether defendant in error held an interest in the land or not, this suit was an action in equity to cancel a release and could only be maintained upon the theory that the record of this alleged release might affect the rights of defendant in error if the lease should be transferred to a purchaser who had no knowledge of this release being void, as contended by defendant in error. The trial court would not have jurisdiction of such a suit against nonresident defendants served only with out of state process.

What was said by Justice McClendon in American Soda Fountain Co. v. Hairston Drug Co. (Tex. Civ. App.) 52 S.W.(2d) 764, is very much in point in this case. The following quotation is found in 52 S.W.(2d) 764, on page 767 of that decision:

"The action was in form clearly one for damages for breach of warranty and fraud, and the prayer for general relief would have supported a personal judgment. The specific relief prayed for was a credit on the notes and pro tanto cancellation of the lien. In so far as the suit may be construed as an affirmative action based upon fraud or breach of warranty, it was clearly a personal action.

"In so far as it merely sought a credit upon the indebtedness represented by the notes, it was purely a matter of defense which could be urged whenever action was brought on the notes (Mason v. Peterson [Tex. Com. App.] 250 S. W. 142), and could not form the basis of an independent suit. An independent action ·to enforce the credit must rest upon some equitable ground; and, since the credit claimed constituted a defense, pro tanto, to the notes, except in the hands of a bona fide holder, it follows that to obtain any relief it must be shown that the notes were not due, and there was danger of their passing into the hands of a bona fide purchaser before maturity. The only relief which equity could afford would be to enjoin the negotiation of the notes or to compel by mandatory injunction the entering of a credit thereon. This relief would be personal, and could not be granted or enforced against a party over whose person the court had not obtained jurisdiction.

"In so far as the action sought cancellation pro tanto of the lien, and to that extent may be regarded as one only in rem against a nonresident, it would be governed by the provisions of R. S. arts. 1975—1979. These articles were not complied with (1) in respect to service (Wilson v. Bank, 27 Tex. Civ. App. 54, 63 S. W. 1067, error refused; Norvell v. Pye [Tex. Civ. App.] 95 S. W. 666); and (2) in the inhibition against a judgment by default and the requirement of a statement of facts (article 1978). These articles provide a method whereby titles and interests in property situated in this state may be adjudicated so as to bind the

rights of nonresidents, who cannot be reached by the ordinary processes of the courts of this state, on account of want of jurisdiction over their persons. The state has the power to provide for such adjudication, and, when it has prescribed the procedure therein, we think such procedure is exclusive.

"From whatever viewpoint the judgment be regarded, it cannot in our opinion be sustained.

"In remanding the cause for further proceedings, it should be noted that the prosecution of the writ of error by the soda fountain company, in which it invoked the jurisdiction of this court, and thereby sought and obtained a reversal of the judgment against it, constituted a personal appearance on its part as a litigant, and it will not be necessary to issue further process.

"The trial court's judgment is reversed, and the cause is remanded to that court for a new trial."

We adhere to our original disposition of this cause and, accordingly, defendant in error's motion for rehearing will be overruled.