## DANCIGER OIL & REFINING CO. OF TEXAS et al. v. CHRISTIAN.

### No. 10357.

Court of Civil Appeals of Texas. Galveston.

Oct. 18, 1937.

Rehearing Denied Nov. 4, 1937.

Huggins, Kayser & Liddell, of Houston, for appellant Danciger Oil & Refining Co.

Fulbright, Crooker & Freeman, of Houston, for appellant Batson Oil Co.

Walter F Brown, of Houston, for appellant John A. Deering.

Pleasant F. Graves, of Houston, for appellee.

CODY, Justice.

This suit is one involving the right to recover rentals on a drilling rig, payable in oil production, and was brought by appellee Christian in a district court of Harris county, against the Danciger Oil & Refining Company, Batson Oil Company, and John A. Deering, appellees. The material allegations of plaintiff's (appellee here) petition are, in substance:

That in October, 1932, an oil, gas, and mineral lease covering $103\frac{1}{4}$ acres in the Donaho league, Hardin county, was acquired by Burt Exploration Company and W.

P. Luse, known as the Hooks lease. That the Hooks lease had been assigned to, and was owned by, defendant Danciger Company, at the time of the execution of the contracts between it and plaintiff (upon which this suit is based). That by the contract of October 7, 1933, plaintiff was to furnish defendant Danciger Company a certain standard oil well rotary drilling rig with draw works and equipment to be used by said defendant in drilling a well for oil or gas on the Hooks lease, known as Hooks Well No. 2, and for the use thereof said defendant was to pay plaintiff the sum of $1,500 per month, at Houston, in advance. That said defendant used such rented oil well drilling equipment of plaintiff, paying plaintiff the rentals agreed upon, until the 8th day of February, when the basis of the rentals was changed, effective February 12, 1934. That the change in question was effected by a written modification of the original contract (which was also in writing), and as modified, the rental contract provided plaintiff should be entitled to receive, instead of the $1,500 in cash per month, the sum of $750 in cash, plus a payment to be made out of ¼ of ⅞ of the first oil or gas produced, saved and sold from the Hooks lease, said oil and gas payment to be of the value of $1,500 per month. That defendant Danciger Company used plaintiff's equipment under the modified rental contract for 141 days, and was liable to plaintiff for an oil payment in the sum of $7,050, as, if and when ¼ of ⅞ of the oil from said lease, of that value, was first run. That about July 18, 1934, defendant Danciger Company transferred the Hooks lease to Burt Exploration Company, to defendant Batson Company, and to J. B. McAdams, under an agreement whereby defendant Danciger Company should have the right to receive the sum of $40,000 out of ⅛ of ⅞ of any oil or gas that might thereafter be produced from the east half of such lease, That thereafter McAdams transferred his interest, reserving a ⅛₈ overriding royalty, to defendant Batson Company. That by written instrument dated September 10, 1934, defendant Batson Company obligated itself to pay defendant Danciger Company $40,000 out of ⅛ of ⅞ of the first oil or gas thereafter produced and saved from the east half of 103¼ acres covered by the Hooks lease, and, later, Batson Company delivered written transfers to defendant John A. Deering of certain interests in the Hooks lease, subject, however, to the aforesaid McAdams overriding royalty, and subject to the right of the Danciger Company to the $40,000 oil payment out of the east half of the Hooks lease as aforesaid. That about the 9th of November, 1934, a well-producing oil was completed on the east half of the Hooks lease, which has produced an average of 100 barrels a day since its completion, of the reasonable value of $1 per barrel. That plaintiff (at the time of filing the petition) is entitled to his oil payment in the sum of $1,596.80 and is entitled to continue to receive the production from ¼ of ⅞ of the oil first run from the Hooks lease until he has received oil payment amounting to $7,050. That all defendants, before they acquired their interests, had actual and constructive knowledge of plaintiff's claim and right to the rig rental payments to be made out of oil as provided in the rig rental contract as modified by the written contract aforesaid of February 8, 1934. That defendant Danciger Company kept and used plaintiff's rig and equipment for 141 days, by reason of which said defendant is indebted to plaintiff in the sum of $7,050 payable as oil and gas may be produced from the Hooks lease, and as the sum may be realized out of ¼ of ⅞ of the oil and gas produced and saved from the Hooks lease. That each of defendants have denied, and do now deny, that plaintiff has any right, title, or interest in the production from the Hooks lease. That defendant Danciger Company denies that it is indebted to plaintiff, and refuses to execute and deliver to plaintiff an assignment evidencing plaintiff's interest in the production, as obligated to do by the terms of the modification contract of February 8, 1934. And that defendant Danciger Company is demanding of the other defendants, and of the Sun Oil, and of the Sun Pipe Line Companies, that there be delivered to it ⅛ of ⅞ of all the production from the Hooks lease, until it has received $40,000, and denies plaintiff is entitled to any part or interest therein; and the other defendants are claiming to own the balance of the ⅞, or working interest, of the Hooks lease, and are undertaking to sell and dispose of it as their own, and demanding that the Sun Companies aforesaid account to them therefor, and that none of the production or the proceeds therefrom be delivered to or paid over to plaintiff.

Then follows the prayer that plaintiff have judgment against the Danciger Company for $7,050, together with interest thereon at the rate of 6 per cent. per annum, to be collected out of ¼ of ⅞ of the produc-

tion from the Hooks lease, or the proceeds therefrom, if, as, and when collected. Also that plaintiff have judgment for $1,596.80, representing his share of the oil already produced, to be credited against the debt of $7,050. Plaintiff prays for specific performance of the provision of the modification agreement of February 8, 1934, that Danciger Company execute, acknowledge, and deliver to plaintiff a valid assignment of the oil and gas produced and saved, constituting the oil payment rental for the use of plaintiff's rig, or so much thereof as will make the sum of $7,050 when realized out of the production. Plaintiff also prays, in effect, to have the interests of the Batson Company and of Deering, in the Hooks lease, adjudged subordinate to plaintiff's right to oil production therefrom in the amount of $7,050. The prayer contains an alternative request, should the court refuse to enforce specific performance on the part of Danciger Company, and so require it to execute a transfer of $\frac{1}{4}$ of $\frac{7}{8}$ of the production until $7,050 has been paid, which does not seem necessary to detail, due to the disposition made of the case.

The defendants answered by general demurrers, special demurrers, and special answers. And Batson Company filed a cross-action to quiet title to their interests—but the further nature of the pleadings, including plaintiff's supplemental petitions, is not deemed necessary to set forth here.

The case was tried before the court without a jury, and judgment was rendered in favor of plaintiff; and at the request of defendants, the court filed conclusions of law and fact; and defendants have appealed. What the trial court's holding was, and what his conclusions of fact and law were, sufficiently appear herein below among the grounds urged by appellants for cause of reversal.

Defendants urge that plaintiff's petition was fatally defective, and their general demurrer ought to have been sustained, specifying as to the particulars in which the petition was fatally defective, the following:

"(a) It fails to set forth the terms and conditions of the contract on which plaintiff's claim, if any, arose;

"(b) It does not allege that defendants have produced and saved oil or gas in sufficient quantities to pay plaintiff the amount of money stipulated as a rental for the use of his drilling rig out of an alleged fractional portion of such oil;

"(c) It does not allege that the defendants have 'sold' any part of any oil or gas produced from the Hooks leasehold estate;

"(d) It does not allege that the defendants have failed or refused to pay any amounts which Danciger Oil & Refining Company of Texas contracted to pay to plaintiff as rental for the use of his drilling rig.

"(e) It merely seeks to have this Court to determine allegedly disputed rights between the parties, but does not allege the breach of any rights or that plaintiff has sustained any damage or loss by reason of any breach of said contract."

The defendants further urge as grounds for reversal of the judgment the following:

"(a) In holding as a matter of law that the contract of February 9, 1934, created in favor of plaintiff W. G. Christian any right, title or interest in the minerals in or under the land covered by the Hooks oil or gas lease, or in and to the oil or gas produced therefrom;

"(b) The court erred in rendering judgment, the effect of which is to construe that the contract of February 9, 1934, created and granted to plaintiff W. G. Christian an interest in the oil and gas produced, saved and sold from the land covered by the Hooks oil and gas lease;

"(c) In holding and rendering judgment that the right of the plaintiff Christian to have and receive payment out of the oil and gas produced from the land is superior to the right, title and interest of the defendants Batson Oil Company and John A. Deering, because (1) the contract of February 9, 1934, does not give Christian any right, title or interest in the Hooks oil and gas lease or in the oil or gas produced thereunder; (2) the contract of February 9, 1934, does not create any covenant running with the land, and, therefore, said defendants acquired title to the Hooks oil and gas lease free from any claim or right herein attempted to be asserted by plaintiff W. G. Christian; (3) at the time that plaintiff W. G. Christian entered into his contract of February 9, 1934, with Danciger Oil & Refining Company he had constructive notice of the provision of a previous recorded contract made by Danciger Oil & Refining Company under the terms of which Danciger Oil & Refining Company of Texas elected not to drill further wells on the Hooks oil and gas lease, then Danciger was obligated to reconvey said Hooks oil and gas lease to other parties free from burdens or conditions;

"(d) In denying defendants Batson Oil Company and John A. Deering a judgment upon their cross-action against W. G. Christian; and

"(e) In making the adjudications rendered in this case, because all the same are merely declaratory judgments and the court is without jurisdiction to render decrees of that character."

The agreement of February 8, 1934 (sometimes referred to as February 9, 1934), is in the following words:
"State of Texas,
"County of Harris.

"Agreement made this 8th day of February, 1934, by and between W. G. Christian of Houston, Harris County, Texas, hereinafter called First Party, and Danciger Oil & Refining Company of Texas, a Texas Corporation of Fort Worth, Texas, hereinafter called Second Party,

"Witnesseth:

"Whereas the parties hereto did heretofore by written instrument dated October 7, 1933, enter into a contract by virtue of which Second Party rented from First Party a certain standard oil well rotary drilling rig, with draw works, and other equipment as contracted for is now being used by Second Party in the drilling of the well for which its use was desired, that is, the Hooks No. 2 well in the Batson Field, Hardin County, Texas;

"Now, therefore, know all men by these presents: That for good and valuable considerations moving to both parties to said original contract of October 7, 1933, it is hereby agreed and contracted that the terms and provisions of said original contract as to the rental for said rig are hereby modified so that beginning with February 12, 1934, Second Party shall pay in advance to First Party at Houston, Texas, the sum of Seven Hundred and Fifty ($750.00) Dollars per month · cash, plus Fifteen Hundred ($1500.00) Dollars per month payable out of one-fourth (¼) of seven-eighths (⅞) of the first oil and/or gas produced, saved and sold from the Hooks leasehold estate on which said well No. 2 is now being drilled, for the time subsequent to February 12, 1934, that said rig is kept or used by Second Party in connection with the drilling and completion of said Hooks well No. 2; and upon the completion of said well, said rig and equipment is to be promptly returned by Second Party at its own cost and expense to First Party in the manner provided in said original contract.

"It is further understood and agreed that if, as when oil or gas in paying quantities be produced on said leasehold estate, Second Party will promptly execute and deliver to First Party appropriate conveyance or assignment of the interest in such production to which First Party may be entitled under the terms hereof.

"Except as herein specifically modified as to the amount and method of payment of said rig rental, said original contract of October 7, 1933, shall remain in full force and effect.

"In witness whereof Danciger Oil & Refining Company of Texas has caused this instrument to be executed by its proper officers thereunto duly authorized and its corporate seal to be affixed hereto, and the said W. G. Christian has signed the same in duplicate originals this the 9th day of February, 1934.
                    "Danciger Oil & Refining
                         Company of Texas.
                    "By Jack Danciger
                    "W. G. Christian
"Attest: J. E. Vaeth [Seal]."

The undisputed facts developed on the trial were these:

To the date of the above-mentioned contract between Christian and Danciger Company, the Hooks oil and gas lease was owned by the Danciger Company and it was engaged in the drilling of a second well on said lease, a prior well on said lease having been completed by Danciger Company as a dry hole; that after entering into the contract with plaintiff, Danciger Company used plaintiff's drilling rig and equipment a sufficient length of time so that a rental thereon calculated at the rate of $1,500 per month would have amounted to the sum of $7,050; that said second well on the Hooks lease was completed in June or the early part of July, 1934, as a dry hole; that thereafter, to wit, on July 18, 1934, Danciger Oil & Refining Company, by proper written assignment, conveyed and transferred said oil and gas lease to Batson Oil Company and J. B. McAdams; that thereafter, by mesne conveyance, defendant John A. Deering acquired an interest in said oil and gas lease and the defendant John A. Deering, and Batson Oil Company thereafter drilled a well on the land described in said lease and the same came in as a producer on or about

September 15, 1934, and continued to produce oil up to the date of the trial of this cause.

The Hooks oil and gas lease contains the following drilling provision:

"Not exceeding five months from date hereof, Lessee binds and obligates himself to commence the drilling of a well upon the leased premises and to continue such operations with reasonable diligence, in an honest effort to discover oil, until a depth of 5,000 feet is reached or oil or gas in paying quantities is produced at a lesser depth or until formations rendering it impractical to drill deeper is encountered. If said well is a dry hole, or is abandoned for the reasons hereinabove mentioned then Lessee shall commence the drilling of another well on said land within 60 days from the date of abandonment of said first well and shall continue to drill other wells so that not more than 60 days shall elapse between the abandonment of one well and the beginning of another well until a well producing oil or gas in paying quantities has been completed on this land. The failure to so drill wells in the manner and time as provided herein shall terminate this lease as to both parties."

This lease was filed for record on the 13th day of March, 1933, before plaintiff made his contract with Danciger.

The conveyance and assignment of the above-mentioned Hooks oil and gas lease from the original lessees to Danciger Company is a plain assignment and contains no provisions requiring Danciger Oil & Refining Company of Texas to drill any wells. And this assignment was filed for record on the 27th day of March, 1933, before the modification contract of February 8, 1934, was entered into.

■ The action of the trial court in overruling defendants' general demurrers and special exceptions was correct; for plaintiff's suit against the Danciger Company was not simply one to recover judgment for debt, but was one for specific performance of the promise of the Danciger Company to execute and deliver to plaintiff an appropriate conveyance or assignment of the interests in production from the Hooks lease that plaintiff claimed, and was entitled to under the terms of the modification contract of February 8, 1934. The allegations of plaintiff's petition are of facts which are necessary and sufficient to entitle him to such specific performance. When that promise is specifically performed, then the equitable right in the production which plaintiff owned under such contract would become a legal right and interest as well. In other words, when plaintiff received the conveyance from Danciger Company of so much of the production from the Hooks leasehold estate (out of ¼ of ⅞ thereof as amounted to $7,050) that would constitute a complete remedy for the wrong plaintiff complained of. For plaintiff could then demand of the Pipe Line Company, that runs the production from the Hooks lease, and receive payment for the oil covered by such conveyance or assignment. Plaintiff's petition clearly sets forth his right, the violation of his right by Danciger Company and the other defendants, and the legal injury resulting to plaintiff; and further sets forth direct allegations of every fact going to make up each of these elements. There is therefore no merit in defendants' contention that the court below should have sustained their general demurrers to plaintiff's petition.

■■ The trial court found as a fact that the defendants, other than Danciger Company acquired their interests in the Hooks lease with full knowledge of plaintiff's right, under the contracts of February 8, 1934, to production from such lease. Indeed, the proof shows that these other defendants had been furnished complete information by plaintiff of his claims, and they apparently decided in their own minds that plaintiff did not, under the facts, have any right to production under the lease. Plaintiff's right to production under the conveyance which Danciger was bound to execute and deliver to plaintiff when oil was produced from the lease was, in the language of the trial court, "an interest and right pertaining to said lands and minerals therein and thereunder, produced and sold therefrom," an equitable interest subsisting so long as the promise to execute and deliver such instrument and pay over such part of the production remained unenforced. Sheffield v. Hogg, 124 Tex. 290, 77 S.W. (2d) 1021, 80 S.W.(2d) 741; Colquitt v. Eureka Producing Co. (Tex.Com.App.) 63 S.W.(2d) 1018. Consequently, when Batson Company and John A. Deering took their interests in the Hooks lease, with full knowledge of plaintiff's right to production from the lease to the extent of $7,050 out of ¼ of ⅞ they necessarily took subject to plaintiff's right thereto. And the lower court correctly so held.

It should be added to the facts already stated that, when the assignor to the Danciger Company, of the Hooks lease, assigned it, by an agreement not placed of record, it was agreed that, in case the Danciger Company should determine to abandon drilling operations under the lease, such company should so notify its assignor, and, if requested so to do, should reassign such lease to its said assignor. Paintiff had no knowledge of this agreement. After Danciger Company had completed Hooks No. 2 as a dry hole, it notified its assignor of its intention to abandon its drilling operations on the Hooks lease, and offered to reassign it; but was requested instead to assign the lease to the Batson Company and J. B. McAdams, which was done.

Now the contract, by the terms of which plaintiff agreed to take a part of the rent for the use of his rig out of the proceeds of production from the Hooks lease, excludes the idea that he was willing to accept the credit or personal obligation of the Danciger Company therefor. The money payment of $750 was made payable in advance; and was paid in advance. With reference to payment in case of production from the lease in paying quantities, it was provided: "It is further understood and agreed that if, as (and) when oil or gas in paying quantities be produced on said leasehold estate, Second Party (i. e. Danciger Company) will promptly execute and deliver to First Party appropriate conveyance or assignment of the interest in such production to which First Party may be entitled under the terms hereof."

The "interest in such production" referred to, is the right to receive the proceeds of the stipulated portion of the production. This provision contemplates, of course, that the purchasing companies or pipe lines running the production from the Hooks lease would require the usual division orders to be executed, under which they would remit directly to plaintiff the proceeds from the purchase of $\frac{1}{4}$ of $\frac{7}{8}$ of the production from the lease; that is, the money should be sent directly to plaintiff at his address in Houston. The payment from the production of the rig rentals *is not distinguishable, in principle, from the case of where the owner of a lease assigns it upon the consideration of a sum certain to be paid him out of the oil produced and saved therefrom. Such payments are profit issuing out of the land covered by the lease.* When they have accrued they become personal property; *but rents and royalties or other oil payments to accrue in the future are an estate in the land from which they issue.* U. S. v. Noble, 237 U.S. 74, 35 S.Ct. 532, 59 L.Ed. 844, as quoted with approval by our Supreme Court in Sheffield v. Hogg, 124 Tex. 290, 77 S.W.(2d) 1021, 80 S.W.(2d) 741. *The fact that the rent is to be paid in money does not make it any the less a profit issuing out of the land.* Idem. Also see Holliday v. Erwin (Tex.Civ.App.) 85 S.W.(2d) 355, in light of the writ of error granted therein, the notation of the ground for granting which being: "The C.C.A. erred in holding that under the terms of the assignment from Appellee of the oil and gas lease he conveyed all his rights in the lease and thereby, in effect, holding that appellee, under the facts pleaded and proven, did not show himself to have any interest in the land that therefore his action was not one to establish such an interest."

The judgment of the trial court is affirmed.

At the time the decision of this case was announced, I announced my dissent. Exigencies arose that imposed on me the unusual office of writing the majority opinion, as well as such dissent. In writing the opinion for the majority, I became convinced of its soundness, and accordingly withdraw my dissent.

Affirmed.