A. C. Erwin v. A. F. Holliday et al.

No. 6997.   Decided January 19, 1938.
Rehearing overruled February 16, 1938.
(112 S. W., 2d Series, 177.)

*Boone, Henderson, Boone & Davis,* of Corpus Christi, for plaintiff in error.

The plaintiff having been the original lessee in the oil and gas lease and therefore being the owner of a determinable fee in the mineral estate, and having provided in the instrument that he should receive a certain portion of the first oil produced and sold from the land covered by the lease, he thereby retained an interest in the real estate and such interest is subject to all the laws applicable to real property. Sheffield v. Hogg, 124 Texas 290, 77 S. W. (2d) 1021; Hardy v. Beaty, 84 Texas 562, 19 S. W. 778.

*I. W. Keyes,* and *Johns, McCampbell & Snyder,* all of Corpus Christi, for defendants in error.

Notice to a nonresident confers no jurisdiction. American Soda Fountain Co. v. Hairston Drug Co., 52 S. W. (2d) 764; Norvell v. Pye, 95 S. W. 666; Wilson v. National Bank of Cleburne, 63 S. W. 1067.

*H. S. Lattimore,* of Fort Worth, filed brief as amicus curiae.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

On December 10, 1932, plaintiff in error A. C. Erwin, as lessee, was holder of an oil, gas and mineral lease executed by T. J. Smith and wife as lessors. Said lease covered 50 acres of land in Nueces County. Among other things it provided for payment of $75.00 per acre out of 1/4th of 7/8ths of the first oil as, if and when produced, saved and sold.

On the date above mentioned Erwin assigned said lease to Walter D. Caldwell. The consideration for said assignment was $500.00 in cash and the further sum of $16,250.00 payable out of 1/4th of 7/8ths of the first oil, only as, if and when produced, saved and sold from said land. In addition, the assignee

took the lease subject to the oil payment in favor of the Smiths. The lease in question had a provision for the beginning of operations within sixty days, subject to a right of forfeiture in favor of the original lessors.

On January 7, 1933, Erwin executed to Walter D. Caldwell an instrument which released the said Caldwell from the payment of $10,000.00 of the said $16,250.00 oil payment provided for in the assignment from Erwin to Caldwell. On March 6, 1933, Caldwell executed an assignment of said lease to A. F. Holliday for a recited consideration of $10.00. Said assignment was made subject to all obligations payable out of oil produced, saved and sold from the land.

This suit was instituted in the district court of Nueces County, Texas, on January 16, 1934, by Erwin as plaintiff and against A. F. Holliday, Walter D. Caldwell, Benedum & Trees, Inc., a corporation, W. L. Benedum, J. O. Trees, I. W. Keyes, and the Texas Company, a corporation authorized to do business in Texas. The parties will be designated as in the trial court.

The purpose of the suit, briefly, was to cancel and annul the release of January 7, 1933, wherein plaintiff released Caldwell from the payment of $10,000.00 of the $16,250.00 oil payment; and for a decree establishing plaintiff's right to the full sum of $16,250.00. The ground upon which a cancellation was sought was alleged fraud and duress. The petition shows that defendants A. F. Holliday, W. L. Benedum and J. C. Trees are residents of Allegheny County, Pennsylvania, and that Benedum & Trees, Inc., is a foreign corporation with its principal place of business in Allegheny County, Pennsylvania. These defendants were served by notice to serve nonresidents. The other defendants were residents of Texas and all filed answers. The nonresident defendants never answered.

It appears that on March 20, 1934, plaintiff first took an interlocutory judgment by default against defendants A. F. Holliday, Benedum & Trees, Inc., and J. C. Trees. Then on April 4, 1934, plaintiff dismissed the defendants Caldwell, Keyes and W. L. Benedum from the suit. Afterwards, on April 25, 1934, the case was called for trial as against defendants Holliday, Benedum & Trees, Inc., and J. C. Trees. They not having appeared or answered, proof was offered and judgment was rendered in favor of plaintiff against said last named defendants cancelling and holding for naught the release of January 7, 1933, and the same was decreed null and void. It was further decreed that plaintiff was entitled to recover 1/4th of 7/8ths of the first oil produced from the 50 acres of

land until the full sum of $16,250.00 was paid. This judgment was reversed by the Court of Civil Appeals upon the ground that there had not been sufficient service upon the nonresident defendants to support a judgment; and the cause was remanded. 85 S. W. (2d) 355.

The sole question for decision here is whether or not service upon the defendants by nonresident notice was sufficient to authorize the judgment.

We do not find it necessary to determine the interesting question of whether or not plaintiff's right to the sum of $16,250.00 "payable out of 1/4th of 7/8ths of the first oil, only as, if and when produced, saved and sold," constituted an interest in real estate. Nor is it necessary to determine whether or not an action to cancel the release in question was purely one in personam.

1 It is now definitely settled that the states possess exclusive jurisdiction over property situated within their territorial limits. Having this control, the ownership of same, whether the owner resides within the State or some other state, is subject to the laws of the state where the property is situated relating to the holding, transfer and enjoyment of same, and the modes prescribed by law for establishing, determining and quieting titles thereto. The owner, even though a nonresident, is chargeable with knowledge of the general laws prescribing the manner in which it may be enjoyed or the titles thereto affected. Although the owner may not reside within the State, nevertheless the State may provide methods of quieting, settling and promoting the security of titles, conditioned upon a reasonable method of imparting notice. Of course, in the accomplishment of such purposes the courts can not act directly upon the person of the nonresident owner or claimant, but upon the title or the property itself. Citation of authorities is not necessary, but a helpful collation of cases will be found in the case of McDaniel v. McElvy, 91 Fla. 770, 108 So. 820, 51 A. L. R. 731, and the annotation beginning at page 754.

It must be remembered, however, that this right of the State to quiet and settle titles to property within its borders, so far as nonresidents are concerned, rests upon statute. It follows, therefore, and is practically admitted, that the right of plaintiff to maintain his action for cancellation of the release, as regards the nonresident defendants, necessarily depends upon Article 1975 of the Revised Statutes of 1925; and the method of service must likewise be determined by Article

1976 of said statutes, as same existed when this action was instituted.

Article 1975 is as follows:

"Persons claiming a right to or interest in property in this State may bring and prosecute to final decree, judgment or order, actions against nonresidents of this State, or persons whose place of residence is unknown, or who are transient persons, who claim an adverse estate, or interest in, or who claim any lien or incumbrance on said property, for the purpose of determinig such estate, interest, lien or incumbrance, and granting the title to said property, or settling the lien of incumbrance thereon."

2 For the purposes of this decision we may assume, without deciding, that the right which plaintiff had was "a right to or interest in property." We observe that our statute does not say the estate or interest must be in real estate, but in "property." We may further assume, without deciding, that the cancellation of the release, while partaking of a personal action, nevertheless had relation to the quieting and settling of the title to property within the purview of the foregoing article. We may further assume that the action of the court in cancelling the release would become effectual as to the title without bearing in any manner upon the person of the nonresident defendants. But, assuming all this, we are still of the opinion that such action could not be maintained under said article of the statute except upon service of notice by publication. At the time service was attempted to be made in this case Article 1976 read as follows:

"Such action may be maintained by any such person whether or not he is in actual possession of such property. Service on the defendant or defendants may be made by publication as is or may be provided by law for publication of citation against such defendants."

Said article in the light of the history of such legislation clearly means, that in addition to personal service within the State, which was manifestly assumed as permissible, service may also be had by publication. It must therefore be construed as furnishing the only means of service, in the absence of personal service within the State. The original act of which Article 1975 was a part was enacted shortly after the decision of the Supreme Court of the United States in the case of Hart v. Sansom, 110 U. S. 151, 28 L. Ed. 101, 3 Sup. Ct. 586. That case involved title to land in Texas, and so far as the

nonresident defendant was concerned, the decree was limited to cancellation of a deed or deeds. It was held that in absence of a statute providing such a remedy a decree cancelling a deed affecting property within a state would not bind a nonresident, except upon personal service within the State. It was further suggested that it was doubtless within the power of the State to provide for such an action by statute. Pursuant to this suggestion, and in conformity with the later decision of the Supreme Court in the case of Arndt v. Griggs, 134 U. S. 316, 33 L. Ed. 918, 10 Sup. Ct. 557, the Legislature of this State, as well as the legislatures of many other states, passed acts providing for quieting of titles as against nonresidents. In so far as we have been able to find said statutes were modeled after the one under consideration in the case of Arndt v. Griggs, and in every instance provided for service by publication. The Texas act was adopted in 1893, and provided for service by publication in the language contained in Article 1976 as set out above. The emergency clause of the act contains the following: "The fact that there is now no law in the State providing for obtaining jurisdiction over nonresidents of the State, and unknown persons, in suits to quiet title and remove clouds from title to real estate in the State of Texas, * * * creates an emergency." We call attention to the fact that the Legislature at its 4th Called Session, 1934, amended Article 1976 by adding the following: "Or by service of notice of the character and in the manner provided by Articles 2037 and 2038 of Title 42, Chapter 3, of the 1925 Revised Civil Statutes of the State of Texas." The emergency clause of that act contained a recital as follows: "The fact that some confusion has arisen as to the proper method of service in suits to remove clouds from title, and suits to quiet title, * * * creates an emergency."

Service, when not otherwise defined, means personal service. It seems to us therefore conclusive that as no law existed authorizing actions to quiet titles as against nonresidents prior to the Act of 1893, and such actions must necessarily depend upon the authority then given, and brought forward from time to time, service must be in accordance therewith; because no other method is provided by law. The general statutes did provide for personal service upon nonresidents within the State and of course the Legislature did not intend to supersede that method. Assuming that the Legislature presupposed that personal service within the State was permissible, it becomes manifest that the method provided by Article 1976 at time notice was served in this action was exclusive. American

Soda Fountain Co. v. Hairston Drug Co., 52 S. W. (2d) 764.

The case of McLaughlin v. McCrory, 55 Ark. 442, 18 S. W. 762, 29 Am. St. Rep. 56 (relied upon by plaintiffs in error). and the case of Heck v. Nicholas, 6 Fed. (2d) 10, which are the nearest analogous cases upon the facts, were both proceedings based upon service by publication.

3  We cannot say from the record before us that the defendants who were dismissed from the case were necessary parties under the rule announced in Sharpe v. Landowners Oil Assn., 127 Texas 147, 92 S. W. (2d) 435. The nonresident defendants having entered their appearance for the purpose of prosecuting an appeal, are now in court. American Soda Fountain Co. v. Hairston Drug Co., supra; Lucas v. Patton, 49 Texas Civ. App. 62, 107 S. W. 1143. The necessity for other parties can therefore be determined by the trial court in the event of another trial.

For the reasons herein stated, the judgment of the Court of Civil Appeals remanding the cause is affirmed.

Opinion adopted by the Supreme Court January 19, 1938.

Rehearing overruled February 16, 1938.