**INDUSTRIAL FINANCE SERVICE CO. et al., Appellants,**

**v.**

**Allen V. RILEY et ux., Appellees.**

**No. 15143.**

Court of Civil Appeals of Texas.

Dallas.

Oct. 5, 1956.

Second Motion for Rehearing Denied Oct. 26, 1956.

Jackson C. Burroughs, Dallas, for appellants.

Edward C. Fritz, Dallas, for appellees.

DIXON, Chief Justice.

Our opinion heretofore delivered July 20, 1956 is withdrawn and in lieu thereof the following opinion is substituted.

This is an appeal from a judgment rendered October 12, 1955 after a jury verdict in favor of appellees Allen V. Riley and his wife Mayme R. Riley against appellants Industrial Finance Service Company, Louis K. Cassett, J. H. Pollak and Joseph H. Pollak for the sum of $5,494.14 plus interest and court costs. The recovery was for usury and also for damages alleged to have been brought about by appellants' unreasonable, harsh collection efforts, which caused appellees to suffer mental and emotional pain and physical illness.

The case was tried on appellees' fourth amended petition, but in order to understand the issues presented on this appeal it is necessary to review the history of the litigation as reflected in the record before us, including some of the superseded pleadings.

## I

### History of the Case

The litigation began January 8, 1951 when appellees filed suit against seventeen loan companies and three credit insurance companies. Sixteen of the loan companies were either individually owned or were partnerships. One of the loan companies and the three credit insurance companies were corporations.

Appellees' original petition alleged a joint and several cause of action against the twenty defendants, including the present appellants. It was asserted that over a considerable period of time and on different occasions appellees had borrowed money from each of the loan companies, and in connection with each loan had been fraudulently required to pay for credit insurance and purported service charges. It was further asserted that each defendant and each possible combination of them had entered into an agreement, plan, and joint venture to evade and circumvent the usury laws of the State of Texas, and to effect and enforce collections from appellees, and that in both separate and concerted actions they hounded appellees by harsh and wrongful collection efforts. The alleged harsh and wrongful collection efforts are described in some detail, and it was asserted that they were committed intentionally, willfully and maliciously. The prayer was for double recovery for usury and for actual and exemplary damages for personal injury.

On January 29, 1951 appellant Industrial Finance Service Company filed its motion to dismiss, or in the alternative to sever the cause of action as to said Industrial Finance Service Company. It was alleged in the motion that there was a misjoinder of caus-

es of action, as the transactions alleged by appellees were separate and set up separate and severable causes of action against the defendants. This motion was never acted on by the trial court, so far as the record discloses. Neither was it ever withdrawn or dismissed by appellant.

Sometime prior to February 25, 1953 the trial court entered an order dividing the defendants into four groups and providing for a separate trial as to each group. This order is not shown in the transcript so we cannot describe its contents in detail. But it is referred to in appellees' third amended petition and also in a later order of the court.

On February 25, 1953 appellees filed their third amended petition. We quote from this pleading:

"Come now Allen V. Riley and wife, Mayme R. Riley, plaintiffs, and pursuant to the order of the Court to file separate pleadings herein, as to four different groups of defendants, and without waiving their rights to a single trial of all the defendants, and incorporating herein at the outset all the allegations of plaintiffs' second amended original petition, file this their third amended original petition, showing as follows:

*"Plaintiffs' cause of action for damages for libel and slander, and wrongful harassment and collection efforts are indivisible among the various defendants, because it is impossible for plaintiffs to divide the causation of their injuries among the defendants. The wrongful collection efforts of the defendants occurred over a period of years in varying intensities having varying effects upon plaintiffs, some of which were not immediately demonstrated before another defendant or other defendants would contribute thereto, and all the defendants' wrongful collection acts are thus mingled inextricably into one total cause.*

*"Only because the Court has ordered separate pleadings do plaintiffs, maintaining their exception to such order, file the separate pleadings hereinafter filed.*

"Plaintiffs withdraw their first trial amendment to their second amended original petition, having filed same only pursuant to an order of the Court that they segregate the damage among the defendants by ownership groups." (Emphasis supplied.)

On May 28, 1953 the trial court *on its own motion* entered an order of severance. We quote a part of this order:

"* * * the Court considered the pleadings of all parties as they now stand, plaintiffs' third amended original petition, divided into Parts I, II, III and IV pursuant to previous orders of the Court, as therein alleged, for separate trial without severance of the causes against the defendants named in the several parts, and the answers of the defendants to the said third amended original petition, and being now of the opinion that there should be an actual severance so that each of the severed parts may proceed to final judgment as a separate cause and that all previous orders for separate trial without severance should be set aside, it is so ordered.

"It is, therefore, hereby ordered by the Court of its own motion * * * that the suit of the plaintiffs, Allen V. Riley and Mayme R. Riley, against the defendants named in Part IV of plaintiffs' third amended original petition, Industrial Finance Service Company and others, and Southern Life Insurance Company, be, and it is hereby severed from the suits against all other defendants and separately numbered on the docket as cause No. 50526–G–4.

"It is further ordered that the pleading heretofore filed in this cause shall

be pleadings in each of the four causes herein created by severance, but that the third amended original petition of plaintiffs and the answers thereto entitled Part I, shall be filed only in No. 50526–G–1 and Part II, only in 50526–G–2, and Part III only in 50526–G–3, and Part IV only in 50526–G–4;

\* \* \*

"To all of which orders of severance the plaintiffs duly except."

On April 12, 1955 appellees filed in this severed cause of action their fourth amended original petition, the pleading on which they went to trial. In it they name as defendants only Industrial Finance Service Company, a partnership composed of Louis K. Cassett, J. H. Pollak and Joseph H. Pollak, and Southern Life Insurance Company, a corporation. Only one of the other defendants originally charged in appellees' original petition is mentioned by name in the fourth amended petition, though the wording of the pleading seems to include the other defendants. So far as the record indicates, appellees' joint and several cause of action against numerous defendants had by this time, over the protest of appellees, been broken into separate suits, pursuant to the court's order of severance of May 28, 1953.

Appellant Industrial Finance Service Company replied to appellees' fourth amended petition in a fifth amended answer. They name the other loan companies originally sued by appellees and allege among other defenses that the acts of these loan companies, and each of them, constituted the sole proximate cause of appellees' injuries and damages, if any.

Following the jury verdict judgment was rendered in favor of the defendant Southern Life Insurance Company, but against appellant Industrial Finance Service Company and its owners, Louis K. Cassett, J. H. Pollak and Joseph H. Pollak, for usury and actual damages. The court rendered judgment non obstante veredicto in favor of said appellants as to exemplary damages.

## II

### Facts

There is evidence in the record showing a series of loan transactions between appellants and appellees extending from February 1948 to October 1950. These transactions involve loans, renewals, service charges, insurance charges, and "other charges." Appellants have not presented points on appeal contesting that usury was proved, so we shall not go into a detailed discussion of the evidence on that score.

█ Upon failure of appellees to keep up their payments, appellants began a bombardment of collection letters, telegrams, and telephone calls, in daytime and nighttime, at appellees' home and at their places of employment. In addition the company's collectors called in person at appellees' home and places of business. There is testimony that the methods employed by appellants were "nasty, harsh and loud," and sometimes contained implied threats. The evidence in our opinion amply supports the jury finding that appellants' collection efforts were unreasonable and were made with malice and with reckless disregard of appellees' health and welfare.

There is ample evidence to show that these harsh, unreasonable and malicious collection efforts caused both appellees physical injury as well as mental and emotional pain and suffering. Their effect was to upset Mrs. Riley so that she lost sleep and vomited and suffered from nervous headaches. On one occasion she went to work but became so ill that she had to return home in an hour. On another occasion appellants' collector came to her place of employment at Wyatt's Grocery Store and talked so loud to her that her manager intervened and told him to stop; she became so nauseated that she vomited "all over the store" on her way back to the

rest room, and had to be excused from further work four and a half hours before closing time. On another occasion one of appellants' collectors came to Mrs. Riley's place of employment and stayed thirty or forty minutes until the store manager "ran him off." Mrs. Riley's weight decreased from 120 pounds to 108 pounds. She was extremely nervous for six months.

The effect on her husband was even worse. He became terribly angry and upset, and went to pieces. He worked at night and slept during the day, but was unable to get his sleep due to appellants' numerous calls and demands. The calls came both day and night. They made him a nervous wreck. His health went down rapidly. In 1950 he had a stroke and fell out of bed. This was soon after January 2, 1950 when he received one of appellants' letters. Thereafter his eyesight worsened; his right side became partially paralyzed; he walked groggily; his arm became stiff and pained him up to the shoulder; his hand and arm movement was limited; he had trouble swallowing at times; and his speech was affected. He went to three doctors who prescribed pills to cut down his nightmares and ease his pain. In January 1951 he was discharged from his job at Smith Detective Agency because of the numerous calls made by the loan companies.

The jury found that appellants' collection efforts were a proximate cause of appellees' mental and emotional pain, physical illness, and loss of compensation and employment.

However it is well to pause here to point out that appellant was not the only loan company which was engaged in making calls and other collection efforts directed toward appellees. Appellees had become involved with about fifteen loan companies. And the jury expressly found that the acts and conduct of some of these other loan companies were a proximate cause, though not the sole proximate cause, of appellees' damage.

A further fact is obvious under the evidence: It is impossible to ascertain the amount of damages caused by any one loan company separately from the entire damages caused by all the loan companies considered together as joint tort-feasors. In truth all parties are in agreement that the damages are indivisible and cannot be specifically apportioned among the wrongdoers. Appellants base some of their points on appeal on such fact and appellees concede the fact. The case was tried and the appeal is founded on the theory that the entire indivisible damages were caused by joint tort-feasors.

In this connection we refer to a portion of appellees' third amended petition which we earlier quoted in this opinion under our "History of The Case." In that pleading it will be observed that appellees protested the severance of their joint and several causes of action, asserting that their cause is indivisible and it is impossible for them to divide the causation of their injuries among the defendants.

In their brief in this appeal appellees say: "It was clearly impossible for plaintiffs to limit their testimony to that portion of their illnesses which was caused solely by Industrial. The facts indicated that several other loan offices contributed to plaintiffs' illnesses, along with Industrial, and no one loan office solely caused any one illness. It would have been ridiculous to limit Mr. Riley's testimony to any one segment of his palsy, for example. The only possible way to present the testimony on injuries was to present the total injuries. * * * It is true that Riley was unable to say which particular act of which defendant caused which part of his damages."

Mrs. Riley testified as follows:

"Q. So that your situation out there was such that some fifteen of

these people that you have sued were calling so much that it upset you and irritated you? A. That's right.

"Q. And would it be possible at all for you to pinpoint against any one of those defendants as to what that one defendant—and say that he caused you all of your suffering? A. I haven't alleged that one defendant caused all of the suffering herein.

"Q. That's what I am talking about. So it would be impossible for you to do that, wouldn't it? A. They did their proportionate part.

"Q. I know their proportionate part, but is it possible for you to say what proportionate part they did play? A. No.

"Q. So that it came about by the action of all of these people you have sued resulting in one total effect, didn't it? A. I would say that is true.

"Q. Yes, ma'am. Now, that's what your petition says, isn't it? A. Yes.

"Q. And that's what Mr. Riley swore to, isn't it, in all of these law suits? A. That is right."

### III

### Conclusions

In their points Nos. 1 and 9 appellants complain that the court erred in ordering separate trials as to each of the defendants, in allowing the Rileys to testify as to their total injuries, in allowing other witnesses to testify as to acts of misconduct without limiting their testimony to acts committed by appellants, and in rendering judgment against appellants, since the evidence failed to support a finding allocating a definite portion of the damages caused by appellants.

■ We agree with appellants that it was error for the trial court to sever appellees' cause of action against Industrial Service Company from their joint and several action against fifteen loan companies including Industrial. Landers v. East Texas Salt Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731. But it was not error of which appellants may complain on appeal for the reason that they did not object or except to the severance in the trial court. In fact they had filed a motion asking for severance. Though the motion was not acted on by the court, it was never withdrawn by appellants.

It was appellees who strenuously objected and excepted to the court's order of severance, and who stated in writing that they would plead separately against appellants only because required by the court to do so. However appellees, having obtained a judgment in the trial court for actual damages, of course do not desire a reversal on appeal, so have not seen fit to raise the issue of severance in this Court.

■ As we have already stated, under the evidence in this case it was impossible to ascertain the amount of damages caused by any one loan company separately from the entire damage caused by all the loan companies considered as joint tort-feasors. It was therefore proper for appellees to prove their entire damages, which entire damages they were entitled to recover from any one or more of the joint tort-feasors. Landers v. East Texas Salt Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731. The error in this case lay not in allowing proof of the entire damages, but in the manner of submission of the damage issues, as we shall point out in passing on the third of appellants' points on appeal. We overrule points Nos. 1 and 9.

In their point 2 appellants say that we should reverse and render judgment in appellants' favor because appellees, following the severance, elected to go forward with their proof, but failed with their proof to show the amount of injuries caused by appellants separately from the other tort-feasors.

A study of the record shows that appellees consistently protested, objected, and excepted to the trial court's action in ordering a severance of their causes of action against the defendants. In fact, as we have already pointed out, in one of their pleadings they expressly stated that they would plead separately against appellants only because required by the court to do so. Rather than decline to amend and have their entire suit dismissed, they reluctantly proceeded to trial against the appellants alone. It was not error for them to so proceed, for as was said by our Supreme Court in Landers v. East Texas Salt Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731, at page 734: "Where the tortious acts of two or more wrongdoers join to produce an indivisible injury * * * *the injured party may proceed to judgment against any one separately or against all in one suit.* If fewer than the whole number of wrongdoers are joined as defendants to plaintiff's suit, those joined may by proper cross action under the governing rules bring in those omitted." (*Emphasis supplied.*)

The record plainly reflects that the case was tried on the theory that there were "tortious acts by two or more wrongdoers." Appellees' fourth amended petition charges conspiracy, and refers to lending company agent defendants and lending company defendants in the plural number, thus plainly indicating that more than one wrongdoer is charged. Appellants' fifth amended answer expressly names the other loan companies who are alleged to have contributed to appellees' injuries.

If the pleadings are not sufficient to show a joint and several cause of action the evidence adduced by both parties removes all doubt about it. The evidence plainly shows a joint and several cause of action. It was on that theory that the case was tried. And under Rule 67, T.C.P., complaint will not now be entertained in regard to any inadequacy, if there was any inadequacy, of the pleadings to allege a joint and several cause of action. Appellants' point 2 is overruled.

Appellants in their point No. 3 complain because of the submission of special issues 18 and 19, wherein the jury was asked what sum of money would compensate Mr. Riley and Mrs. Riley respectively for damages "directly and proximately caused by the collection efforts of Industrial Finance Service Company, its agents and employees." Appellants point out that both issues limit the jury's answers to damages caused by Industrial Finance Service Company alone. This was error, say appellants, because it was impossible to separate the damages caused by Industrial from the entire damages caused by the acts of all the loan companies as joint tort-feasors. We agree with appellants.

It is doubtless true that in some cases involving joint tort-feasors it is possible under the evidence to break down the damages suffered by a plaintiff so that a specific portion may be adjudged against each wrongdoer separately. But each case must be determined according to the nature of the evidence presented. In this particular case it was error under the facts adduced to ask the jury to do what the parties themselves say cannot be done, that is, to find what specific portion of appellees' entire damage was caused by these appellants alone. Landers v. East Texas Salt Water Disposal Co., supra. Point No. 3 is sustained.

In their point No. 4 appellants assert that (1) since the pleadings and the evidence show that appellees suffered one injury inflicted by fifteen joint tort-feasors; and (2) since under the circumstances appellees are entitled to but one satisfaction; and (3) since the Rileys have already received $7,850 by settlement with some of the joint tortfeasors; and (4) since the judgment here did not give credit for the settlements; and (5) since the jury found the Rileys' damage to be $5,000 actual damage ($3,000 to the husband and $2,000 to the wife); and (6) since the Rileys have already received

$2,850 above the amount of their entire damage, it follows that the court erred in rendering any judgment against appellants except for usury. In support of this point appellants cite us the case of Bradshaw v. Baylor University, 126 Tex. 99, 84 S.W.2d 703.

The fallacy in appellants' argument is that in this case there has not been a finding as to appellees' entire damages. There is only an attempt by the jury to find $5,000 as the portion of the damage caused by Industrial Finance Service Company alone, as pointed out in appellants' point No. 3. The excess, if any, of appellees' entire damages above the $7,850 already received by appellees cannot be computed until appellees' entire damage is ascertained. We overrule appellants' point 4.

Appellants in their point No. 5 say that since the jury found in answer to special issue No. 15 that appellants made no collection efforts with a purpose of causing appellees mental or emotional pain and suffering or loss of work, it was error to render a judgment for any damages against appellants. Appellants apparently would have us attach no significance to the jury's answers to special issues Nos. 13, 14, and 23. In their answers to said issues the jury found that appellants made (13) unreasonable collection efforts, (14) with reckless disregard for appellees' health and welfare, and (23) with malice. We think these findings along with findings of proximate cause are sufficient to support a finding of damages against appellants. Their point 5 is overruled.

In their point No. 6 appellants take the position that the testimony shows that Mrs. Riley suffered only mental distress, hence it was error to award any judgment for damages as to her. We are unable to agree with appellants that the testimony shows that Mrs. Riley suffered only mental distress. There is ample testimony, as shown, in our summary of the facts, to support the jury's finding that Mrs. Riley suffered physical injuries and illness as well as mental pain and suffering. The award of damages under the circumstances was not improper. Duty v. General Finance Co., 154 Tex. 16, 273 S.W.2d 64. Appellants' point 6 is overruled.

Appellants contend in their point No. 7 that since appellees accepted certain credit insurance life policies in connection with their loans, paid the premiums, enjoyed the benefits, and made no complaint until after the policies had expired, they are estopped from recovering the premiums paid as part of the usurious interest on their loans. There is no merit to this contention. No issue as to estoppel was submitted to the jury, and none was requested by appellants. Moreover the jury found that Industrial Service Finance Company, as a condition for making a loan, required appellees to purchase the insurance from a company represented by appellants, charged appellees an amount greater than the loan with a purpose of increasing the proportion of the charges to the amount of money lent, and charged appellees credit insurance premiums with a purpose of obtaining usury. Under the facts estoppel was not applicable. Associates Inv. Co. v. Thomas, Tex.Civ.App., 210 S.W.2d 413, at page 416; Glover v. Buchman, Tex.Civ.App., 104 S.W.2d 66. Appellants' point 7 is overruled.

In their point No. 8 appellants say that the amount of the judgment is excessive. In sustaining appellants' point 3 we held that the damage issues were not properly submitted. In view of such holding this point has become immaterial. Point 8 is overruled.

Appellants in their supplemental brief complain that the defendants Louis K. Cassett, J. H. Pollak, and Joseph H. Pollak, who reside in St. Louis, Missouri, and are owners of Industrial Finance Service Company, were never served with notices or citations in this suit, therefore a personal judgment against them cannot stand.

The record before us contains no copies of citations served on any of the defendants in this case, or returns on citations. But we think the record plainly shows that the three entered their appearances through written pleadings duly filed, thereby submitting themselves to the jurisdiction of the trial court. The court's judgment specifically names the three individual defendants, and follows with this recital: "* * * came the parties and their attorneys and announced for trial * * *." The judgment further recites: "Each party excepted to all rulings herein unfavorable to such party." Such recitals will be presumed to be true. King v. Howell, Tex.Civ. App., 120 S.W.2d 298, at page 302; Murphy v. Moseley, Tex.Civ.App., 11 S.W.2d 234, at page 236; Southwest National Bank v. Cates, Tex.Civ.App., 262 S.W. 569, at page 570; 4 Tex.Jur. 618.

Moreover, the three defendants in question through their attorney made objections to the court's charge, filed a motion to reform the judgment against them by allowing credit on the judgment for the settlements already made with other joint tort-feasors, and filed their amended motion for new trial. The court's order overruling the amended motion for new trial recites that the defendants gave notice of appeal to this Court.

Even if we were to hold that the three individual defendants were not properly before the trial court (we do not so hold), there can be no doubt that they have submitted themselves to the jurisdiction of this Court on appeal. The record contains a copy of an appeal and supersedeas bond signed and filed by them in the amount of $12,000. We have decided to reverse the judgment appealed from and to remand the cause for another trial. Having submitted to the jurisdiction of this Court for purposes of appeal, the defendants will be properly before the trial court on a retrial of the case following reversal. Rule 123, T.R.C.P.; Erwin v. Holliday, 131 Tex. 69, 112 S.W.2d 177; American Soda Fountain Co. v. Hairston Drug Co., Tex.Civ. App., 52 S.W.2d 764.

Appellees have interposed a cross-assignment of error. They assert that the court erred in granting judgment for appellants notwithstanding the verdict as to exemplary damages, thereby reducing appellees' judgment by $5,000.

We sustain appellees' cross-assignment. As heretofore pointed out the jury found that appellants' collection efforts were unreasonable, were made with reckless disregard for appellees' health and welfare, and were made with malice. We think these findings, along with findings of actual damages, are sufficient to support an award of exemplary damages.

Since there may be another trial of this cause we believe it is appropriate for us to say that in our opinion the case should be tried in accordance with the holdings in Landers v. East Texas Salt Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731, 732, which has heretofore been cited in this opinion. In that case our Supreme Court said: "* * * The plaintiff was asserting a joint and several cause of action for damages against the two defendants and when the trial court ordered a severance of the cause so that plaintiff's suit asserting joint and several liability of the two defendants could no longer be tried, the plaintiff's case was terminated just as effectively as if it had been dismissed. * * * Where the tortious acts of two or more wrongdoers join to produce an indivisible injury, that is, an injury which from its nature cannot be apportioned with reasonable certainty to the individual wrongdoers, all of the wrongdoers will be held jointly and severally liable *for the entire damage* and the injured party may proceed to judgment against any one separately or against all in one suit. If fewer than the whole number of wrongdoers are joined as defendants to plaintiff's suit, those joined may by proper cross-action under the governing

508

rules bring in those omitted * * *." (Emphasis supplied.) If a finding is made as to the entire damages caused by all the joint tort-feasors, credit should be allowed for the amounts of settlements made with any one or more of them. In other words, appellees would be entitled to judgment for the excess, if any, of their entire damage over the total amount of settlements received from one or more of the joint tort-feasors. Bradshaw v. Baylor University, 126 Tex. 99, 84 S.W.2d 703.

For the error in submitting issues 18 and 19 as asserted in appellants' point No. 3, the judgment of the trial court is reversed and the cause remanded for another trial.

On Second Motion for Rehearing

In their motion for rehearing appellees assert that if there was error in the way the charge was submitted, defendants failed to preserve it by proper exception to the charge.

█ Examination of the record convinces us that the defendants, who are appellants in this Court, preserved their objection to the submission of Special Issues Nos. 18 and 19 by proper exceptions to the charge.

Here is one of their several objections to the submission of Special Issue No. 18:

*"Defendant further specially objects and excepts to the submission of Special Issue No. 18 for the reason that the issue should be submitted as to the amount of total damages suffered by the plaintiffs.* Otherwise, it will be impossible for the Court to give this defendant credit for the amount of settlements that he has made with the other people and other defendants in this case who by the uncontradicted testimony shows contributed to the plaintiffs' total injury." (Emphasis supplied.)

An objection in identical language was made to Special Issue No. 19. We think that Issues 18 and 19 should have been submitted as to the entire damages suffered by the plaintiffs, as we have stated in our original opinion, and the objections of the appellants seem to us directly to point out the error in the way the two issues were submitted.

Appellees' second motion for rehearing is overruled.