## STATE NAT. BANK OF CORPUS CHRISTI et al. v. MORGAN.

### No. 4966.

Court of Civil Appeals of Texas. Amarillo.

Dec. 12, 1938.

Rehearing Denied Jan. 23, 1939.

Kleberg, Eckhardt & Lowe, of Corpus Christi, Wm. K. Hall, of Houston, and Robt. W. Stayton, of Austin, for appellants.

John P. Bullington and Baker, Botts, Andrews & Wharton, all of Houston, and Keys & Holt, of Corpus Christi, for appellee.

STOKES, Justice.

On the 1st day of November, 1933, appellant, State National Bank of Corpus Christi, conveyed to Jas. G. Fisher 234.55 acres of land located in Nueces County. By special stipulation in the deed the Bank reserved an undivided one-half interest in all of the royalty in oil and other minerals in and under, and that might be produced and mined from the tract of land conveyed. It was provided in such reservation clause, however, that the grantor did not reserve nor retain any right of participating in the making of future oil and gas leases nor of participating in the bonus or bonuses which may be received from any future lease, nor of participating in any rental that may be paid for the privilege of deferring the commencement of a well under any lease then or thereafter executed. It provided further that any lease or contract that may be made for the development of the land should provide for a royalty of not less than one-eighth of any oil or gas that may be produced.

On the same day, Fisher conveyed the land to appellee, Rand Morgan, and in his deed it was provided that the conveyance was subject to the reservation to appellant Bank of an undivided one-half interest in and to all royalty in oil and other minerals in and under, and that may be produced and mined from the land conveyed as fully set out in the deed from appellant Bank to the grantor of the same date.

On the 6th of April, 1936, appellee, Morgan, joined by his wife, executed to Roland S. Bond an oil and gas lease on a portion of the land, and on the 18th of April, 1936, he executed to Fleetwood Oil Company and J. H. Coker two oil and gas leases on other portions of the land which he had purchased from Fisher under the deed above mentioned.

The oil and gas leases contained the following provision: "5th: In addition to all other reservations of royalties herein made and provided for the benefit of lessors, there is reserved to lessors, their heirs and assigns, the title to an undivided one-eighth of seven-eighths (1/8 of 7/8) equal part of all oil, gas and/or other minerals in, under, and that may be produced and saved from said land, as, if, and when so produced and saved, but not otherwise, until lessors shall have received free of cost of production, marketing or handling, the sum of Forty Eight Thousand Dollars ($48,000.00), whereupon this reservation shall terminate and the title to said one-eighth of seven-eighths (1/8 of 7/8) undivided interest in said oil, gas, and/or other minerals shall thereupon vest in lessee, his heirs, and assigns."

A royalty of one-eighth of any oil that should be produced from the land was reserved to the lessor under the preceding fourth clause of the leases and, pursuant to the provisions of the leases, wells were drilled on each of the three tracts covered by them in which oil was discovered and produced in large quantities. The production from all three of the wells was sold to The Texas Company who paid one-half of the one-eighth reserved in the fourth clause as royalty to appellant Bank and the other one-half to appellee, Morgan, and it paid to the owners of the lease seven-eighths of the remaining portion of the production, but a controversy having arisen between the Bank and appellee, Morgan, concerning the status and ownership of the remaining portion, viz., one-eighth of the seven-eighths working interest reserved in the fifth clause, The Texas Company impounded and declined to pay the proceeds of that portion of the production to either of them and such refusal resulted in the filing of this suit by appellee. The leases were identical in all respects material to this controversy. The issues made by the pleadings involve the provisions of the fifth clause of the leases which is quoted above, appellee contending the one-eighth of the seven-eighths working interest which was retained in that clause constituted what is commonly termed "bonus" and appellant Bank contending it constituted "royalty" and that, by virtue of the reservation in the Bank's deed to Fisher of an undivided one-half interest in and to all of the royalty in oil that may be produced from the land, it is entitled to one-half of the proceeds of the sale to The Texas Company of the one-eighth of the seven-eighths working interest reserved in the fifth clause by appellee, Morgan, and also to one-half of any oil, or its proceeds, that may afterwards be produced or sold of that portion.

At the time of the trial the proceeds from the sale of the one-eighth of the seven-eighths working interest amounted

to the sum of $8,723.21, which The Texas Company admitted it owed and which it sought to pay into the registry of the court to be disposed of in accordance with the finding and decree of the court upon the trial.

The case was submitted to the court without the intervention of a jury and judgment was rendered on the 25th of October, 1937, to the effect that appellee, Morgan, was the sole owner of the one-eighth of the seven-eighths working interest which was reserved in the fifth clause of the leases, decreeing to him the impounded fund held by The Texas Company and denying to appellant Bank any relief.

From the judgment entered by the court the Bank has prosecuted this appeal and presents the case here upon eleven propositions which, we think, may be reduced to two general contentions, first, that the court erred in finding, in effect, as a matter of law, that the quoted fifth clause in the leases was a provision, not for royalty, but for bonus to be paid as consideration for the execution of the leases and, second, that the clause mentioned was an operative and contractual part of the leases, clearly and without ambiguity providing for royalty and parol evidence was, therefore, not admissible and could not be resorted to for the purpose of contradicting it or ascertaining its meaning or effectuating its interpretation.

Under the first contention appellant asserts that the accepted definition of the word "royalty" as given by the present unabridged edition of Webster's dictionary is: " * * * a share of the product or profit (as of a mine, forest, etc.) reserved by the owner for permitting another to use his property."

It asserts further in this connection that the word "bonus" is defined as: "The cash consideration in addition to royalties for a lease or transfer of oil lands."

The conclusion is drawn, therefore, that the fifth clause of the leases which provides that: "In addition to all other reservations of royalties herein made and provided for the benefit of the lessors, there is reserved to lessors, their heirs and assigns, the title to an undivided one-eighth of seven-eighths (1/8 of 7/8) equal part of all oil * * * until lessors shall have received * * * Forty Eight Thousand Dollars ($48,000.00)", necessarily constitutes royalty under the accepted definition above mentioned because it is a share of the product

or profit reserved by the lessor for permitting the lessee to use his property. It contends that the one-eighth of the seven-eighths of the production reserved in the fifth clause by appellee in the leases until that portion amounted to the sum of $48,000, being royalty and not bonus nor any other element of the leasing transaction, appellant Bank, under its reservation in the deed which it executed to Fisher, is entitled to one-half of the proceeds from that portion of the oil in addition to one-half of the one-eighth reserved as royalty in the fourth clause of the leases.

Appellee offered, and the court admitted, extrinsic evidence of acts and circumstances surrounding the transaction which resulted in the execution of the leases, which evidence was objected to by appellant upon the theory that the leases were not ambiguous and the fifth clause involving the fund and interest in controversy plainly designating such interest and fund as royalty reserved to the lessor, extrinsic evidence to contradict it was not admissible and is not available for its interpretation.

If, as here contended by appellant, we confine ourselves to a consideration of the leases themselves, we are impressed with the fact that each of them consists of ten separate and distinct sections or paragraphs, separately numbered and distinctly segregated. The fourth clause in each lease begins as follows: "4th: The royalties reserved by lessor and which shall be paid by lessee are: (a) On oil, one-eighth (1/8) of that produced and saved from said land * * *. (b) On gas produced from said land and sold or used off the land * * *. (c) On all other minerals mined and marketed from said land lessee agrees to pay to lessor a royalty, * * *", etc.

Following the fourth clause appears the clause which constitutes the basis of the controversy in the case and we again quote it as follows: "5th: In addition to all other reservations of royalties herein made and provided for the benefit of lessors, there is reserved to lessors, their heirs and assigns, the title to an undivided one-eighth of seven-eighths (1/8 of 7/8) equal part of all oil * * * until lessors shall have received * * * Forty Eight Thousand Dollars ($48,000.00) * * *".

The entire document must be considered in arriving at a proper interpretation of its terms and, from what we have

said, it will be seen that the fourth clause specifically designates royalties as being the subject matter with which it purports to deal. Then follows the fifth clause which says: "In addition to all other reservations of royalties herein made, there is reserved" the title to one-eighth of seven-eighths of the production until the lessor receives the sum of $48,000. We do not believe it can, with accuracy, be said that the fifth clause of the leases certainly and unqualifiedly provides for that which is commonly referred to as royalty in dealing with oil and gas leases. See Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543; O'Fiel v. Brooks, Tex.Civ.App., 98 S.W.2d 266. Inasmuch as the fourth clause of the leases purports specifically to provide for the royalties reserved by lessor, it would seem that, if the parties to the transaction intended there should be other royalties than one-eighth of the production which is provided for in the fourth clause, they would have inserted such reservation in that clause wherein they purport to deal exclusively with royalties. Such was not done, but a fifth clause was inserted which purports to deal with something which is "in addition to all other reservations of royalties." It is true this clause includes the word "other" in reference to reservations of royalties but we cannot bring ourselves to the stark conclusion that, merely because a reservation is made which is in addition to other reservations of royalties, such additional reservation necessarily itself constitutes royalties. That the interpretation placed upon the provision by appellant is supported by logic, however, there can be no doubt. If it was the purpose and intention of the contracting parties to classify that segment of the production as royalty, binding the lessee to pay it as such and the lessor to receive it as such, then the language used is entirely sufficient for that purpose. But we think the language used is equally susceptible of an entirely different construction. It is announced in the very beginning of the clause that it purports to deal with something entirely different from "all other reservations of royalties". This is evident from the use of the words "in addition to". If it was the intention of the parties to compose and deal with something which was not royalties, but was "in addition to royalties", then we think the language used was entirely sufficient for that purpose.

The further contention is made in this connection that the reservation in the fifth clause of the leases, aside from the fact that it is designated as royalty, is, in substance, a provision for royalty and not for bonus, because it is a share of the production or profit reserved by the owner for permitting the lessee to use his property and thus comes squarely under the accepted definition of the word "royalty" in relation to oil and gas leases which definition we have heretofore mentioned. The contention is that, its identification comporting, as it does, with such accepted and legal definition, results in establishing, as a matter of law, the status as royalty of the portion of the production reserved in the fifth clause of the leases and, it having thus been established as royalty by the parties themselves when the leases were executed, the court erred in holding, in effect, that it was not royalty, but bonus.

We cannot go along with appellant in this ingenious process of reasoning. While Webster's definitions of "royalty" and "bonus" have been adopted and followed in a number of cases by our courts, and are, for all practical purposes, no doubt, the correct ones, yet it is a matter of common knowledge that "bonus", as that term is used in the oil and gas production industry, frequently is made to come from a portion of the oil or gas that may be produced from the land or from the proceeds of its sale as, if, and when produced and sold. Leonard v. Prater, Tex.Com.App., 36 S.W.2d 216, 86 A.L.R. 499; Dashko v. Friedman, Tex.Civ.App., 59 S.W.2d 203; Empire Gas & Fuel Co. v. Pendar, Tex. Civ.App., 244 S.W. 184. Such being the case, it is doing no violence to the expressions of the clause in question to say they could have reference to bonus and not royalties, although the definitions given by Webster's current dictionary, and accepted in pertinent applications by the courts, designate royalties as a share of the product or profit reserved to the owner for permitting another to use his property, and bonus as the cash consideration, in addition to royalties.

The cardinal rule adopted by the courts in construing contracts is to ascertain, if possible, and give effect to the intention of the parties. This is done by considering the expressions and language used by them provided such intention is not in conflict with the rules of law and is ascertainable from the language employed. Marcus v. Armer, 117 Tex. 368, 5 S.W.2d 960, 60 A.L.R. 672. The language used in

expressing agreements will be construed in the light of the facts and circumstances surrounding the parties when the contract was made. Bird v. Lester, Tex.Civ.App., 166 S.W. 112, 113, and authorities there cited. Most certainly so if the terms of the contract are ambiguous or susceptible of more than one construction. St. Louis B. & M. Ry. Co. v. Hicks, Tex.Civ.App., 158 S.W. 192.

This brings us to a consideration of the second contention made by appellant, viz., that the fifth clause was an operative and contractual portion of the contract, clearly and without ambiguity providing for royalties and parol evidence was, therefore, not admissible and could not be resorted to for the purpose of contradicting it or ascertaining its meaning or effectuating its interpretation.

What we have said shows clearly, we think, that the clause of the leases in question undoubtedly was susceptible of more than one construction. The trial court evidently was of the same opinion and, as we have said, admitted extrinsic evidence of the circumstances surrounding the parties and their negotiations preceding the execution of the leases. Guy I. Warren was introduced as a witness for appellee and it was shown by him that he was in the oil business and conducted the negotiations with appellee which resulted in the execution of one of the leases. He stated that the deal was that the lessees were to pay $150 per acre in cash and $600 per acre out of one-eighth of seven-eighths of the oil and gas that may be produced from the land. Upon being asked what royalty was to be paid, he said "one-eighth". Another witness testified that he was connected with the original transaction and that the agreement was for $150 per acre in cash and $600 per acre out of one-eighth of seven-eighths of the oil and gas "and one-eighth royalty". Appellee, Rand Morgan, testified that the original agreement was that he was to receive $750 per acre as bonus, $150 per acre of which was to be paid in cash and $600 per acre out of one-eighth of seven-eighths of the oil when produced. He said he explained this to

Mr. Clark, the president of the appellant Bank, and this was not denied by Mr. Clark. Moreover, the record shows that, after the preliminary negotiations had been completed, appellee wrote a letter to his attorney, requesting him to prepare the leases stating the consideration to be $12,-000 cash and $48,000 out of one-eighth of seven-eighths of the oil and gas. He further testified that his agreement with the parties who negotiated for one of the leases was to retain the regular one-eighth royalty and a bonus of $750 per acre, $150 per acre cash and $600 per acre to be paid out of one-eighth of seven-eighths of the oil and gas if and when produced. Thus it will be seen that both parties to the transaction intended that the land would be leased for a royalty of one-eighth of the production and a bonus of $12,000 cash and $48,-000 to be paid out of one-eighth of seven-eighths of any oil that may be produced.

■ This testimony was not offered nor admitted for the purpose of contradicting the terms of the leases nor do we think it had that effect. It explains the sense in which the terms employed in the fifth clause of the leases were used and intended by the parties to the transaction and harmonizes perfectly with one of the interpretations that can be placed upon the language used. It denotes plainly that the intention of the parties in employing the language used in the fifth clause was that the one-eighth of the seven-eighths of the production which constitutes the basis of the controversy here involved should be bonus and not royalty. Since the only interest the appellant Bank had in the subject matter involved in the case was that which was reserved by it in its deed to Fisher, and that interest was specifically designated as royalty, and the reservation further specifying that appellant should not be entitled to any bonus, it follows that the conclusion reached by the trial court was the correct one.

We have considered all of the assignments of error and propositions presented by appellant and, believing that no merit is shown by any of them, the judgment of the trial court is in all respects affirmed.