# State National Bank of Corpus Christi, Texas v. R. Morgan et al.

No. 7550.  Decided October 23, 1940.
Rehearing overruled December 18, 1940.
(143  S. W., 2d Series,  757.)

*Kleberg, Eckhardt & Lowe,* of Corpus Christi, and *Robt. W. Stayton,* of Austin, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the leases involved in the suit were, as to their fifth clause, subject to an interpretation which would allow extrinsic evidence that bonuses were thereby intended in that such evidence would be in harmony with instead of contradictory to the language used in such fifth clause; because on the face of such writings such an interpretation was not proper. Schlittler v. Smith, 128 Texas 628, 101 S. W. (2d) 543; Tenant v. Dunn, 130 Texas 285, 110 S. W. (2d) 53; Wagner Supply Co. v. Bateman, 118 Texas 498, 18 S. W. (2d) 1052.

*John P. Bullington, Baker Botts, Andrews & Wharton,* all of Houston, and *Keys & Holt,* of Corpus Christi, for defendant in error.

The reservation of one-eighth of the working interest in an oil and gas lease which reserves the usual one-eighth royalty until a fixed amount has been paid was not, as a matter of law, a "royalty" within the meaning of the deed from the bank to Morgan. Curdy v. Stafford, 88 Texas 120, 30 S. W. 551; 23 C. J., sec. 1832, 2001; 31 Texas Jur., 782.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The controversy herein is as to the ownership of undivided one-half interests in certain fractional parts of the oil, gas and other minerals in three tracts of land reserved to lessors in three leases until lessors should receive therefrom, free from cost of production or marketing, stated total sums. Judgment of the trial court in favor of defendant in error Morgan was affirmed by the Court of Civil Appeals. 123 S. W. (2d) 1036.

Plaintiff in error, State National Bank of Corpus Christi, the owner of a tract of land containing 234.55 acres in Nueces County, conveyed the land to James G. Fisher by general warranty deed containing the following paragraph:

"It is expressly agreed and understood that there is reserved to grantor, its successors and assigns forever, and excepted from this conveyance an undivided 1/2 interest in and to all of the royalty in oil, gas, casinghead gas, gasoline, and in all other minerals in and under and that may be produced and mined from the above described land; however, grantor does not by this reservation and exception retain any right of participating in the making of future oil and gas lease nor of participating in the bonus or bonuses which shall be received from any future lease nor of participating in any rental to be paid for the privilege of deferring the commencement of a well under any lease, now or hereafter; it being intended and agreed that in no event will any lease or contract be made for the development of said land or any portion of same for oil, gas, or other minerals, providing for a royalty of less than one-eighth on oil and gas."

Fisher on the same day conveyed the land to defendant in error Morgan, the deed providing that the conveyance was subject to the reservation made in the deed from the bank to Fisher.

Thereafter Morgan executed three oil and gas leases, each covering an 80 acre portion of the 234.55 acre tract. The leases were in substantially identical terms. Each lease recited a cash

consideration of $10.00 and contained the following paragraphs:

"4th.

"The royalties reserved by lessor and which shall be paid by lessees are:

"(a) On oil, one-eighth (1/8) of that produced and saved from said land, the same to be delivered at the wells or the credit of lessor in the pipe line to which the wells may be connected or at the option of the lessees, from time to time, the market price at the wells of such one-eighth (1/8) on the day it is run to the pipe line or storage tanks.

"(b) On gas produced from said land and sold or used off the land or in the manufacture of gasoline, including casinghead gas, the market price at the well of one-eighth of the gas so sold or used, provided that if and when lessees shall sell gas at the wells, lessor's royalty thereon shall be one-eighth of the amount realized from such sale.

"(c) On all other minerals, mined and marketed from said land, lessees agree to pay to lessor a royalty in kind or value, which shall be at lessee's election, one-eighth (1/8) of all such minerals so mined except that the royalty on sulphur shall be One Dollar ($1.00) per long ton for all mined and marketed.

"5th.

"In addition to all other reservations of royalties herein made and provided for the benefit of lessors, there is reserved to lessors, their heirs and assigns, the title to an undivided one-eighth of seven-eighths (1/8 of 7/8) equal part of all oil, gas, and/or other minerals in, under, and that may be produced and saved from said land, as, if, and when so produced and saved, but not otherwise, until lessors shall have received, free of cost of production, marketing, or handling, the sum of Forty-eight Thousand Dollars ($48,000.00), whereupon this reservation shall terminate and the title to said one-eighth of seven-eighths (1/8 of 7/8) undivided interest in said oil, gas, and/or other minerals shall thereupon vest in lessees, their heirs, successors, and assigns."

Morgan admits the bank's ownership of one-half of the one-eighth royalties reserved in the fourth paragraph of the leases. The dispute is about the ownership of the interests reserved in the fifth paragraph of the leases, the bank contending that it owns one-half of such interests, by reason of the reservation of an undivided one-half interest in all royalty contained in its deed to Fisher, and Morgan taking the position that the interests retained in the fifth paragraph of the leases are not royalties, but are bonuses, and therefore are not within the

reservation in the deed. Thus it is apparent that the question for decision is whether the interest reserved in the fifth paragraph of the leases, which for brevity we designate an oil payment, is royalty within the meaning of the deed from the bank to Fisher.

Plaintiff in error's case is thus tersely stated in its application for writ of error:

"Plaintiff in error insists that as a matter of law each of the leases, by means of such clause (that providing for the oil payment) should be construed as plainly and unambiguously providing for royalty and that such contract, being in writing could not, because of the parol evidence rule, be altered in meaning by extrinsic evidence of a contrary intention."

The argument presents first the point that the fifth paragraph of the leases is in substance one providing for royalty and not for bonus, and second, the point that said paragraph expressly designates what it contains as a reservation of royalty and that such designation should be immune from variation under the parol evidence rule.

█ The application for writ of error contains a careful and able presentation of cases dealing with similar reservations to that here under consideration and argues that the important and distinguishing elements of royalty as explained and set out in those decisions, and in other authorities in which the term royalty is defined, are present in the interest reserved in the fifth paragraph of the leases executed by Morgan. We find no decision directly decisive of the question here presented. After careful consideration of the various decisions cited in the application and in the briefs and of the definitions of the terms "royalty" and "bonus," we have reached the conclusion that it does not clearly and plainly appear from the language of the leases that the oil payment provided for in the fifth paragraph is royalty within the meaning of the deed from the bank to Fisher.

We shall refer briefly to some of the Texas decisions discussed in the briefs. In Schlittler v. Smith, 128 Texas 628, 101 S. W. (2d) 543, it was held that a reservation in a deed of an undivided one-half of all royalty rights in all of the oil and gas and other minerals in, on and under a tract of land was a reservation only of an interest in oil, gas or minerals paid, received or realized as royalty and did not include bonuses or rentals. The opinion contains the statement that the words "royalty," "bonus," and "rentals" have well understood mean-

ings in the oil and gas business. These terms are not defined in the opinion and the case does not involve in any way an oil payment or a reservation of an interest in the oil until a certain sum is paid.

In Tennant v. Dunn, 130 Texas 285, 110 S. W. (2d) 53, the owner of an oil and gas lease, for a cash consideration, assigned and conveyed to Mrs. Dunn all its right, title and interest in and to the lease "in so far as it covers and only covers $25,000.00 worth of oil at the market price thereof at Joinerville, Texas, out of and from 5/48 of 7/8 of the oil produced from said well, etc." It was held that the right or interest created by the assignment to Mrs. Dunn was an interest in land. The opinion contains a discussion of several decisions involving royalty, and particularly of Sheffield v. Hogg, 124 Texas 290, 77 S. W. (2d) 1021, 80 S. W. (2d) 741, point out that the gist of the decision in Sheffield v. Hogg is that oil and gas royalties are interests in land because they are profits arising out of land and concludes that the right acquired by Mrs. Dunn should for the same reason be classified as an interest in land.

O'Connor v. Quintana Petroleum Company, 134 Texas 179, 133 S. W. (2d) 112, 134 S. W. (2d) 1016, was a tax suit in which it was decided that a reservation to the lessor of 7/32 of any oil, gas or other minerals produced from the land, until the proceeds of sale by the lessor of said 7/32 should aggregate two million dollars, constituted an interest in land, taxable as such against the lessor as its owner.

■ The oil payments that were the subject of litigation in the cases last referred to were similar in nature to the ordinary oil and gas royalties, as for example, those considered in Sheffield v. Hogg, being profits arising out of land, and accordingly were classified as interests in land. It was not held, however, in those cases that the oil payments were identical with the ordinary royalty or that any and all rights to payment out of oil, not chargeable with costs of production or marketing, are royalties. Defendant in error Morgan concedes, and correctly so, that the interest reserved in the fifth paragraph of the leases is an interest in land. It does not necessarily follow that it is royalty within the meaning of the bank's deed to Fisher. It is true that oil and gas royalty is an interest in land, but it is not true that every interest in land is royalty.

■ Application for writ of error was refused in Sheppard v. Stanolind Oil & Gas Company, 125 S. W. (2d) 643, and thereby the determination of the principles of law declared in the opin-

ion in that case was approved. In that case the leases provided for substantial cash payments, royalties of 1/6 on oil and gas, and for additional substantial sums to be paid out of 1/6 of 5/6 of the first oil and gas, if, as and when produced. It was held that the reserved right to payment of a stated sum out of the fractional part of the oil and gas was an interest in real estate and such interest as imposed upon its owner the bruden of an oil production tax. While the very question to be decided in the instant case was neither presented nor decided in that case, the opinion written by Chief Justice McClendon contains an interesting discussion relevant to the question decided, of the meaning of the terms "bonus" and "royalty" as they are employed in the oil and gas business. We quote the following excerpts from the opinion, with emphasis upon the parts thereof that bear directly upon the question under consideration here:

■ *"The term 'bonus' is applied to sums paid or contracted as an additional consideration for a lease over and above the usual royalty.* * * *

"In this state leases of this character are held to be conveyances of the mineral title in fee upon limitation. Consequently everything paid or contracted, whether in money or in oil or its proceeds, as distinguished from delay rentals, constitutes a part of the purchase price for the lease. *In this particular the 'oil bonus' (the term usually applied to the sums under consideration) stands upon the same footing as the cash bonus.* But here the analogy between the oil bonus and money bonus (whether cash or deferred) ends. Royalty also is on the same footing as bonus, cash, deferred, or oil, as regards representing a part of the purchase price for the lease. * * *

"*Bonus is merely a convenient term applied indiscriminately to consideration for the lease (whether in money or oil) over and above the usual royalty.* Andrews v. Brown, supra. *The usual royalty is 1/8.* Applying this definition the difference between 1/8 and 1/6 would come within this definition of bonus. It might properly be termcd a royalty bonus. And so it would be treated in determining the highest bidder under competitive bidding. Yet its nature is not thereby in any sense changed. It is just as much royalty in every sense of that word as the 1/8, except only that it is in excess of the usual in amount. This difference, however, could have no possible bearing upon the rights and liabilities of the parties and their respective obligations under the taxing laws. The expression 'royalty bonus' would be but a convenient term to represent the royalty consideration for the lease over and above that which

is usual. *The oil bonus, as we have seen, partakes in every particular of the nature of royalty and royalty bonus, except only that its amount is limited.* It is analogous to an overriding royalty. And such it would in fact be if, instead of moving to the lessor, it moved to the lessee under an assignment of the lease."

██ The fact stated in the foregoing quotation, that the usual royalty in oil and gas leases is 1/8, is in our opinion one so generally known that judicial knowledge may be taken of it. Cheek v. Metzger, 116 Texas 356, 291 S. W. 860, 862; Leonard v. Prater, 36 S. W. (2d) 216, 220, 86 A. L. R. 499. When that fact is accepted, the oil payments reserved in the fifth paragraph of the leases executed by Morgan are bonuses as defined in the above quotation; they are sums contracted to be paid as consideration for the leases over and above the usual royalties. The quotation illustrates, however, the difficulty of drawing a distinct line of demarcation between bonus and royalty, for it shows that the difference between the usual 1/8 royalty and the 1/6 royalty comes within the definition of bonus and may properly be termed a royalty bonus, and that what is in essence royalty may also be bonus; and further that the oil bonus or payment out of oil partakes in many particulars of the nature of royalty and royalty bonus.

Other examples of the same difficulty are cases in which the classification of the right or interest is controlled by the peculiar provisions or purposes of a statute, one of such cases being Work v. United States, 261 U. S. 352, 43 Sup. Ct. 389, 67 L. Ed. 693, in which even cash bonuses paid upon the execution of leases were held to be royalties under the provisions of an Act relating to the distribution of royalties from Indian land; and another being Forbes v. Mid-Northern Oil Co., 100 Mont. 10, 45 Pac. (2d) 673, where the court classified payments out of oil royalties within the meaning of a tax statute.

█ Under some of the definitions of royalty and bonus the oil payment appears to be royalty; under others it appears to be bonus. The opinion in Indiana Natl G. & O. Co. v. Stewart, 45 Ind. App. 554, 90 N. E. 384, 386, thus defines royalty, quoting from Webster's Dictionary: "The word royalty * * generally has reference to a share of the product or profit reserved by the owner for permitting another to use the property." This definition has often been quoted. Curlee v. Anderson & Patterson, 235 S. W. 622, 624; Hill v. Roberts, 284 S. W. 246, 249; O'Fiel v. Brooks, 98 S. W. (2d) 266, 269. An oil payment reserved by a lessor comes within the broad terms of this defini-

tion. We believe, however, that a definition more nearly fitting what is ordinarily meant by the unqualified term royalty when used in the oil and gas industry would include as a necessary element of such usual or ordinary royalty the continuance of the share of the product or profit throughout the term of the lease. Associate Justice Greenwood, when discussing the oil and gas royalty in Sheffield v. Hogg, 124 Texas 290, 298, 77 S. W. (2d) 1021, 80 S. W. (2d) 741, describes it as the right to a portion of the proceeds or profit "throughout the duration of a determinable fee." The continuance of the royalty throughout the life of the lease is made the basis for drawing a distinction between bonus and royalty in Geller v. Smith, 130 Cal. App. 485, 20 Pac. (2d) 102, 104, where the term "bonus" as applied to an oil and gas lease is thus defined: "A sum of money paid by the lessee to the lessor in consideration for the execution of a lease, as distinguished from the rent or royalty reserved by the lessor to be paid by the lessee *through the term of the lease.*" (Our italics.)

■ The reservation contained in the bank's deed to Fisher would not be satisfied by the execution of a lease for a royalty that did not continue through the full term of the lease, for the grantor in that deed reserved an undivided one-half interest in and to all of the royalty, with provision that in no event should any lease be made providing for a royalty of less than 1/8 of the oil and gas, meaning of course the usual royalty that continues as long as the lease is in effect.

One of the definitions of bonus given in Webster's New International Dictionary is: "The cash consideration in addition to royalties for a lease or transfer of oil lands." If the word "cash" is here intended to mean the payment of a sum certain in money as distinguished from a payment of a specified total sum out of a portion of the production, oil payments are not within the definition. Mr. Summers, however, includes oil payments in his definition of the cash bonus, which is: "The cash bonus, which represents market value of a lease part from royalties to be paid on production and the other considerations of the lease, is a sum of money paid on the execution of the lease or agreed to be paid at some later date, usually out of the lessee's share of the first oil produced from the land." Summer's Oil & Gas (Permanent Edition) Vol. 3, Sec. 571, pp. 346-347. He discusses oil payments under the title "The Cash Bonus," saying: "Where the payment of a portion of the bonus is deferred, it is common practice for the parties to agree that the deferred portion shall be paid out of the lessee's portion of

the first oil and gas produced. * * * If the cash bonus, whether paid upon the execution of the lease or is made payable out of a portion of the oil or gas produced, etc." Vol. 3, Sec. 586, pp. 391, 392, 398.

Summers' definition of bonus is substantially the same as that contained in the quotation hereinbefore set out from Judge McClendon's opinion in Sheppard v. Stanolind Oil & Gas Company, 125 S. W. (2d) 643: "The term 'bonus' is applied to sums paid or contracted to be paid as an additional consideration for a lease over and above the usual royalty." Another definition of the term in Webster's New International Dictionary emphasizes the thought that bonus is something in addition to what is usually given or paid. It is: "Something given in addition to what is ordinarily received by, or strictly due to, the recipient." For many other definitions of the word as meaning a sum paid or a thing given in addition to, or in excess of, what is ordinarily given, see Words & Phrases (Permanent Edition) Vol. 5, pp. 671-675.

The oil payment is bonus within the terms of the several definitions last discussed, for it is an additional consideration for the lease apart from or above the usual royalty.

■ The form and introductory phrases of the fourth and fifth paragraphs of the leases support the conclusion that the oil payments are intended as bonus rather than as royalty. The fourth paragraph of each lease begins with the statement: "The royalties reserved by lessor and which shall be paid by lessees are." This is followed by careful designation in separate sub-paragraphs of the usual 1/8th royalties on oil, on gas and on other minerals. In a separate paragraph numbered "5th" and beginning with the phrase, "In addition to all other reservations of royalties herein made," the title to 1/8th of 7/8ths of the oil, gas and other minerals is reserved until lessor shall have received $48,000. We believe that Associate Justice Stokes, who wrote the opinion of the Court of Civil Appeals, correctly appraised the significance of the introductory phrases of the two paragraphs when he said:

"Inasmuch as the fourth clause of the leases purports specifically to provide for the royalties reserved by lessor, it would seem that, if the parties to the transaction intended there should be other royalties than one-eighth of the production which is provided for in the fourth clause, they would have inserted such reservation in that clause wherein they purport to deal exclusively with royalties. Such was not done, but a fifth clause

was inserted which purports to deal with something which is 'in addition to all other reservations of royalties.' It is true this clause includes the word 'other' in reference to reservations of royalties but we cannot bring ourselves to the stark conclusion that, merely because a reservation is made which is in addition to other reservations of royalties, such additional reservation necessarily itself constitutes royalties." 123 S. W. (2d) 1036, 1039.

■ These two paragraphs of the leases, in our opinion, but for the use of the word "other" in the fifth paragraph, clearly indicate that the oil payment is and, is intended by the parties to the lease to be, additional consideration above the usual royalty reserved in the fourth paragraph, in other words, bonus. If controlling effect were given to the one word "other," then it would appear that the parties affirmed, and meant by the use of that word, that the reserved oil payment was a reservation of royalty. We are unwilling to give the one word controlling effect against a contrary intention disclosed by the whole of the two paragraphs considered together. In this connection, it may be observed that the provisions of an instrument "must be construed for what they really are, regardless of the designation given them by the parties." Forbes v. Mid-Northern Oil Co., 100 Mont. 10, 45 Pac. (2d) 673, 678; Wagner Supply Co. v. Bateman, 118 Texas 498, 505, 18 S. W. (2d) 1052; Dashko v. Friedman, 59 S. W. (2d) 203, 204.

■ It is no doubt apparent from what has been said that if we were compelled to determine from the leases, without the aid of extrinsic evidence, whether the oil payments are royalty within the meaning of the deed from the bank to Fisher, we would hold they are not royalty, but bonus. Such construction of the language of the leases is, in our opinion, at least reasonable. We are firmly convinced that it does not plainly and clearly appear from the terms of the leases that the oil payments are royalty. For the decision of this case we assume that the use of the word "other" in the fifth paragraph of the leases renders the language of the leases bearing upon the question under consideration fairly susceptible of two constructions. When that is assumed, the extrinsic evidence in the record disclosing the intention of the parties with respect to the oil payments is admissible and competent. Walker v. McDonald, 49 Texas 458; Colquitt v. Eureka Producing Co. (Com. App.) 63 S. W. (2d) 1018; Ryan v. Kent, (Com. App.) 36 S. W. (2d) 1007; 12 Amer. Jur. pp. 786-787, Sec. 248.

The uncontradicted testimony of witnesses, who participated in the negotiations that terminated in the execution of the leases, is that the consideration for the leases, as agreed upon and understood by the parties, was, in addition to the usual 1/8 royalty, $150 per acre in cash and $600 per acre out of 1/8 of 7/8 of the oil and gas. The substance and meaning of this testimony is that the oil payment of $48,000 provided for in each of the three leases of an 80 acre tract was meant and intended to be bonus rather than royalty. The testimony does not contradict the leases but shows an intention consistent with that evidence by the writing when given an interpretation of which it is fairly and reasonably susceptible.

The judgments of the district court and the Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court October 23, 1940.

Rehearing overruled December 18, 1940.