Neville ALFREY, Appellant,

v.

E. O. ELLINGTON, Appellee.

No. 3210.

Court of Civil Appeals of Texas.

Eastland.

Dec. 9, 1955.

Rehearing Denied Jan. 6, 1956.

Stubbeman, McRae & Sealy, Midland, for appellant.

Cunningham & Cunningham, James Little, Big Spring, for appellee.

GRISSOM, Chief Justice.

This is a suit by Neville Alfrey against Dr. E. O. Ellington for a declaratory judgment construing a mineral deed. Alfrey alleged there was a bona fide dispute as to whether said deed conveyed to him an oil payment "attributable to the mineral interest covered by the deed or whether said oil payment was effectively reserved to defendant."

In April, 1953, Dr. Ellington executed an oil and gas lease on the 320 acres later described in the mineral deed in question. Said lease, which was in the usual form, provided that Ellington, in consideration of $10 and the royalties and the agreements therein stated, had leased to Hawkins for the purpose of producing oil, etc., 320 acres of land for five years and as long thereafter as minerals were produced therefrom. In paragraph 3, the lease provided for royalties to be paid to the lessor of ⅛th of the oil and gas produced and rental of $50 per gas well each year. The fourth paragraph provided for payment of $320 per year rental for the privilege of deferring commencement of a well. Paragraph eleven of the lease was as follows:

"In addition to the royalties provided for in numbered paragraph three (3) hereof, lessor excepts from this lease and reserves unto himself, his heirs and assigns ⅟₁₆th of ⅞ths of the first oil, gas and/or casinghead gas produced, saved and sold from said land under the provisions of this lease, if, as and when produced, saved and sold, and not otherwise, until such interest in the production shall have yielded and Lessor shall have received therefrom the amount of $500.00 for each mineral acre actually owned by said Lessor in the above described land covered by this lease, such interest in the produc-

tion to be developed, handled, stored and marketed free of all cost to Lessor except taxes on the production. In the event there shall not be produced from the premises covered by this lease sufficient oil, gas and/or casinghead gas to pay Lessor the sum of $500.00 for each mineral acre covered by this lease in the above described land, then there shall be no obligation on the part of Lessee to make up the deficit. The Lessee herein is under no obligation to drill a well or wells on the property leased hereby for the purpose of creating a fund from which to make the oil and gas payment hereinabove provided. In the event the Lessor shall own less interest in the land hereinabove described than the fee simple estate therein, the interest reserved and provided for in the paragraph shall be reduced proportionately."

Ellington admitted in his answer that when he executed the oil and gas lease "he owned only a $\frac{1}{32}$nd mineral interest in said 320 acres, or—an undivided 10 acre mineral interest."

In March, 1954, Ellington executed a general warranty mineral deed to Alfrey conveying said undivided $\frac{1}{32}$nd interest in the minerals in the 320 acres, with the right of ingress and egress for drilling, etc.

The next paragraph was as follows:

"Said land being now under an oil and gas lease executed in favor of record owners, it is understood and agreed that this sale is made subject to the terms of said lease and/or any other valid lease covering same, but covers and includes one Thirty-second ($\frac{1}{32}$) of all of the oil royalty and gas rental or royalty due and to be paid under the terms of said lease, insofar as it covers the above described land.

"It is understood and agreed that one thirty-second ($\frac{1}{32}$) of the money rentals, which may be paid on the above described land, to extend the term within which a well may be begun under the terms of said lease, is to

be paid to the said Grantee; and, in event that the above described lease for any reason becomes canceled or forfeited, then and in that event, Grantee shall own $\frac{1}{32}$ of all oil, gas and other minerals in and under said lands, together with a like $\frac{1}{32}$nd interest in all bonuses paid, and all royalties and rentals provided for in future oil, gas and mineral leases covering the above described lands."

All parties treat the deed as unambiguous. After Dr. Ellington executed said mineral deed he owned no right or interest in said land or minerals unless the oil payment was retained. The court's construction of said deed was to the effect that it did not convey the oil production payment. Alfrey has appealed.

The appellee, Dr. Ellington, says that, in the absence of anything to the contrary, the granting clause of the deed would have conveyed the oil payment but the parties went further and expressly stated the interest that would thereafter be owned under both the existing and future leases and that controlling effect should be given to the statement of the grantee's interest in future leases because it stated Alfrey would be entitled to a $\frac{1}{32}$nd of any bonus paid for a future lease. He says that the "subject to" provision of the deed not only recited that the conveyance of a $\frac{1}{32}$nd interest in the minerals was subject to the terms of said lease but went further than to merely limit the warranty and set out specifically the interests that would thereafter be owned by the grantee and that said recitals show the oil payment was not conveyed. He argues that an oil payment is an interest in land and an estate of equal dignity with the royalty and leasehold and that such estates do not pass except by words of grant in a deed and that, therefore, there was no grant of the oil payment in this deed; that a grantor only conveys that which he says he conveys; that in this deed there was first conveyed the reversion after expiration of the present lease; that there was next conveyed a part of the interest held by Ellington in connection with the existing lease, namely, royalty and rent to be paid under

the terms of the present lease and that the parties then set out the interest that would be owned by Alfrey after expiration of the present lease and execution of another lease, to-wit, royalties and rentals and, also, bonuses. Wherefore, he concludes the deed shows there was no conveyance of the oil payment. He cites Hoffman v. Magnolia Petroleum Co., Tex.Com.App., 273 S.W. 828 and Grelling v. Allen, Tex.Civ. App., 218 S.W.2d 896 (RNRE). He says that in State Nat. Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757, it was held that an oil payment did not follow a conveyance of "royalty" but that the oil payment in that case was held to be an additional "bonus", which belonged "to the person who had authority to execute oil and gas leases." Ellington also says there are decisions in Oklahoma which sustain Alfrey's view but that it is not sustained by the Texas decisions.

Alfrey cites Oklahoma decisions which hold that an oil payment reserved by a lessor passes to his subsequent grantee of the minerals as either an incident of the mineral estate or a covenant running with the land, unless lessor's deed contains a reservation of the oil payment. See Local Federal Savings & Loan Association of Oklahoma City v. Eckroat, 186 Okl. 660, 100 P.2d 261, 263; Wright v. Carter Oil Co., 97 Okl. 46, 223 P. 835; Goetter v. Manahan, 192 Okl. 600, 138 P.2d 113, and Peppers Refining Co. v. Barkett, 208 Okl. 367, 256 P.2d 443; 10 Tex.Law Rev., 1, 7–10. The Eckroat case, 100 P.2d 261, 262, holds that such an oil payment is a covenant running with the land which passes to the grantee of the minerals. It cites the following Texas decisions: Holliday v. Erwin, Tex.Civ.App., 85 S.W.2d 355, affirmed without deciding this question, 131 Tex. 69, 112 S.W.2d 177, 178, and Danciger Oil & Refining Co. of Texas v. Christian, Tex. Civ.App., 109 S.W.2d 980, 984 (W.D.), which appear to so hold.

Appellant quotes from Hon. A. W. Walker, Jr. in 20 Texas Law Review, 259, 280, the following:

"The problem seems to be the same as the one presented in Texas with regard to the lessor's royalty interest. Just as the lessor's royalty interest may pass under a deed to the land or to the minerals in the land, even though not expressly mentioned, on the theory that it is an interest in land coming within the descriptive clauses of the deed, so it would seem that the oil payment payee's interest might likewise pass. *It would pass,* not because a covenant running with the land, nor because an incident to an estate in land, but *for the reason that it is an interest in land coming within the broad descriptive clause of the grant.*" (Emphasis ours).

Article 1291, Vernon's Ann.Civ.St. provides that every estate in land conveyed shall be deemd a fee simple unless expressly limited.

"The general rule is that a deed will pass whatever interest the grantor may have in the land, unless words are used showing an intention to convey a less estate." 14 Tex.Jur., 930.

"Generally upon conveyance of property the law implies a grant of all the incidents rightfully belonging to it at the time of conveyance and which are essential to the full and perfect enjoyment of the property." Stradley v. Magnolia Petroleum Co., Tex.Civ. App., 155 S.W.2d 649 (Writ Ref.).

In Harris v. Currie, 142 Tex. 93, 176 S.W.2d 302, 304, our Supreme Court in an opinion by Judge Critz said:

"When the owner of the entire estate in land conveys it by ordinary form of deed containing no exception or reservation, his grantee acquires the same title which his grantor had, and such title includes all minerals."

Said decision has been construed as overruling Caruthers v. Leonard, Tex.Com. App., 254 S.W. 779, and as holding that the right to receive delay rentals, although not mentioned in the deed, passes to the grantee of the minerals subject to an existing lease and that a conveyance of

an interest in minerals carries with it a like share in the delay rentals and royalties to accrue under an existing lease without a provision in the deed to that effect. Texas Co. v. Parks, Tex.Civ.App., 247 S.W.2d 179, 185 (RNRE).

Our Supreme Court further said in Harris v. Currie, 176 S.W.2d 302, 305:

"R. H. Harris conveyed to Currie and Wahlenmaier every right, title, and interest he had in this land when he conveyed to them the entire mineral estate he reserved in his deed to F. L. Harris. When we say that R. H. Harris conveyed to Currie and Wahlenmaier every right, title, and interest he had in this land, it is evident that we say that he conveyed not only his one-half mineral estate for the balance of the 15-year period above indicated, but he conveyed his right to use the surface, which was an appurtenance to his conveyed mineral estate. Under such a record, R. H. Harris had nothing left upon which to base a claim for these delay rentals. It would be unreasonable to say that R. H. Harris can collect delay rentals on the thing he has entirely parted with, when such rentals accrued after he had divested himself of such entire title. If the owner thereof sells land already rented or leased for ordinary rental or lease purposes, the purchaser thereof would certainly be entitled to the rent or lease money accruing after his purchase. We can see no reason to apply a different rule to delay rentals provided in an 'unless' mineral lease, accruing after the sale of the entire mineral title to the land involved."

It is admitted that when Dr. Ellington executed the mineral deed conveying a ⅟₃₂nd of the minerals to Alfrey that he parted with all his interest in the land except the oil payment, which he claims for the reasons indicated. We think it would be unreasonable to say that Dr. Ellington can collect an oil payment on the thing he has entirely parted with when such oil payment accrued after he divested himself of his entire title. Harris v. Currie, 176 S.W.2d 302, 305. He conveyed to Alfrey all the minerals he owned, to-wit: ⅟₃₂nd of the minerals in the 320 acres and his deed further stated that he conveyed ⅟₃₂nd of the royalty and rentals due under the terms of said lease and all the rights and appurtenances thereto. The oil payment which he had previously reserved in the lease, for the benefit of himself, his heirs and assigns, is as much an appurtenance or incident to the mineral estate as rentals or royalties. The oil payment was an interest in the minerals conveyed to Alfrey. 5th Institute Oil and Gas Law 61; 20 Tex.Law Rev. 262; Tennant v. Dunn, 130 Tex. 285, 110 S.W.2d 53, 57; State Nat. Bank of Corpus Christi v. Morgan, Tex.Com.App., 135 Tex. 509, 143 S.W. 2d 757, 759; Watkins v. Slaughter, 144 Tex. 179, 189 S.W.2d 699, 700; State v. Quintana Petroleum Co., 134 Tex. 179, 133 S.W.2d 112, 115, 134 S.W.2d 1016, 128 A.L.R. 850; Sheppard v. Stanolind Oil & Gas Co., Tex.Civ.App., 125 S.W.2d 643, 649 (W.R.); Thompson v. Thompson, 149 Tex. 632, 236 S.W.2d 779, 785.

Able counsel for Dr. Ellington correctly argue that the oil payment was an interest or estate of equal dignity with rentals and royalties. But, they conclude, because the oil payment was not mentioned in the deed which expressly recited that the conveyance of ⅟₃₂nd of the minerals included ⅟₃₂nd of the royalties and rentals under the existing lease and then provided that on termination of the present lease the grantee would own, not only those things, but, also, a ⅟₃₂nd of the "bonuses" paid for a subsequent lease of the 320 acres that the deed thus evidenced an intention not to convey the oil payment. We think said recitals added nothing to and subtracted nothing from the legal effect of a conveyance of the minerals. When Dr. Ellington executed a mineral deed conveying and warranting title to a ⅟₃₂nd interest in the minerals (which was all the minerals he owned), and all rights and appurtenances thereto, as a matter of law, he conveyed a ⅟₃₂nd of the royalties and rentals to be paid under the present lease. The bonus

for that lease, if any, had, presumably, been paid when the lease was executed. The right to any bonus that might be paid for execution of another lease after Alfrey acquired the minerals followed ownership of the minerals and the right to execute future leases. We conclude that such recitals were nothing more than a statement of the legal effect of the transfer of title to said minerals. Mecom v. Thompson, Tex.Civ.App., 239 S.W.2d 847, 850 (RNRE); Miller v. Speed, Tex.Civ.App., 259 S.W.2d 235, 237, 238. Furthermore, there is nothing in the deed, or in this record, that would indicate that the reference in the deed to bonuses under future leases was intended to refer to the oil payment that will terminate with the present lease. The paragraph providing that the conveyance is "subject to" the terms of the lease did not create rights, was a term of qualification and not of contract and did not, of itself, purport to limit the granting, habendum or warranty clauses. Kokernot v. Caldwell, Tex.Civ.App., 231 S.W.2d 528, 531 (W.R.). The oil payment is payable out of the lessee's share of production under the present lease and will terminate with said lease. The oil payment being an interest in the minerals, in the absence of a contrary intention manifested by the language of the deed, passed to the grantee of the minerals along with all other rights and appurtenances thereto that belonged to the grantor. The question as to whether a mineral deed which contains a "subject to" clause relative to an existing lease, wherein lessor has reserved an oil payment which does not mention the reserved oil payment, passes title to the oil payment has been, in effect, decided by our Supreme Court. In Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355, our Supreme Court, in construing a mineral deed not materially different from this one, held that the grantee received the grantor's interest in all the royalties, rentals and bonuses, even though the word "bonus" did not appear in the granting clause, the "subject to" clause or elsewhere, except, as here, in the clause providing for future leases. It would appear from this decision that our Supreme Court has held that, unless expressly reserved, all bonuses (which circumstances such as those in State Nat. Bank of Corpus Christi v. Morgan, 143 S.W.2d 757, include oil payments) pass to the grantee by the terms of a mineral deed such as we have here. It appears that under said decision and Harris v. Currie, supra, that a general warranty deed to all the grantor's interest in minerals, in the absence of an intention to the contrary manifested by the language of the deed, conveys to the grantee an oil payment reserved in a prior lease. Although Professor Walker's conclusion that an oil payment passes to the grantee because "it is an interest in land coming within the broad description clause of the grant," appears to us to accurately state the reason, it is not necessary for us to here decide whether such oil payment is conveyed because it is an interest in the minerals conveyed or is a covenant running with the land, or whether it passes for said reason. See 20 Tex.Law Rev. 280, 281. We hold that the oil payment was conveyed by the deed in question. In Harris v. Currie, 176 S.W.2d 302, 304, our Supreme Court said:

"When the owner of the entire estate in land conveys it by ordinary form of deed containing no exception or reservation, his grantee acquires the same title which his grantor had, and such title includes all minerals. Hill v. Roberts, Tex.Civ.App., 284 S.W. 246; Bibb v. Nolan, Tex.Civ.App., 6 S.W.2d 156, error refused; 31 Tex.Jur., p. 547." See also Currie v. Harris, Tex.Civ. App., 172 S.W.2d 404, 408; Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543, 544; Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563, 565; Jensen v. Wilkinson, Tex.Civ.App., 133 S.W.2d 982, 984 (Writ Dis.); Woods v. Sims, Tex., 273 S.W.2d 617, 621; 14 Tex. Jur. 930; 123 A.L.R. 848, 849; 31-A Tex.Jur. 839; 31-A Tex.Jur. 88; Holloway's Unknown Heirs v. Whatley, 133 Tex. 608, 131 S.W.2d 89, 92.

The judgment is reversed and judgment is rendered for appellant.