**W. D. MASTERSON, Independent Executor of the Estate of Branch T. Masterson, Deceased, et al., Appellants,**

v.

**GULF OIL CORPORATION et al., Appellees.**

**No. 13087.**

Court of Civil Appeals of Texas.

Galveston.

April 18, 1957.

Rehearing Denied May 9, 1957.

Lewis D. Fisher, Houston, Kilgore & Kilgore, Wilmer D. Masterson, III, Dallas, for appellant.

Eastham & Williams, Willard C. Williams, Houston, for appellees J. H. Tigner and others.

Robert F. Carter, William C. Spence, Houston, for appellee Gulf Oil Corp.

Walter C. Clemons, Houston, of counsel, for appellees.

GANNON, Justice.

On November 19, 1929, the Independent Executors of Branch T. Masterson, Deceased, conveyed to George H. Bingham by general warranty deed certain lands in Brazoria County, Texas. However, the deed contained the following exception and reservation:

"It being expressly agreed and understood, however, that there is reserved by the Grantors herein and excepted from this conveyance, an undivided one-sixteenth (¾₁₆) royalty interest of any oil, gas or minerals that may hereafter be produced on said land and one-half (½) of any bonus or rental paid in lieu of such royalty interest; * * *."

On January 25, 1949, the grantee, George H. Bingham, having died intestate his administrator, J. H. Tigner, executed an oil and gas lease on the subject land to Gulf Oil Corporation. The lease is in the usual form and for a primary term of five years. It provided for annual delay rentals of $2,554.80. Gulf Oil Corporation paid a $12,774 cash bonus for the execution of the lease, and has subsequently paid annual delay rentals totaling $8,934.30. The cash bonus and all delay rentals have been paid to Bingham's administrator. No part of said cash bonus or of said delay rentals has been paid to Masterson's executor, his heirs or devisees. The Mastersons claim they are entitled to one-half of all bonus and delay rentals paid under the lease, and seek a money judgment therefor.

With all interested parties before it, the trial court ruled that the foregoing reservation did not entitle the Mastersons to any part of the cash bonus or delay rental involved and denied recovery therefor. The Mastersons appeal, claiming that under the reservation they are entitled to receive one-half of the cash bonus paid for the execution of the lease as well as one-half of all delay rentals paid thereunder.

In support of their position, the Mastersons say that when effect is given to the plain unambiguous language of the reservation it is clear that they are entitled to one-half of the ordinary cash bonus and ordinary delay rentals involved. Their position is stated variously, as follows: Bonus, rental and royalty are, in a sense, alternative payments and each is paid instead of or in place of the other. Cash bonus and delay rental payments are by their "very nature" in lieu of royalty which would be required in the event of production. The grantors in the deed of November 19, 1929, simply reserved one-half of all money payments made for the exclusive right to explore or utilize the mineral estate. This is true because bonuses and rentals came into existence as substitutes for or as payments in lieu of royalties, having evolved to replace what would otherwise be immediate and continuous drilling obligations. Differently put, the Mastersons argue that ordinary cash bonus and delay rentals paid for and under an oil lease are actually and in essence royalty, so that as a matter of law such payments necessarily represent royalty and are paid in lieu or in place thereof. They say: "It seems * * * inescapable that * * * in every ordinary oil and gas lease the bonus paid is * * * a payment in lieu of royalty; [that] rental paid is * * * payment made in lieu of royalty; [and] that when royalty is paid such payment is in lieu of any further need either for bonus payment or rental payment so long as the royalty payment continues."

We are not impressed with these contentions. They prove too much. Given logical effect they would establish in the ownership of a mere royalty interest ipso facto a right to a proportionate share of all ordinary bonus and delay rents. Nor would it be necessary to sustain such right that there be express provision for a proportionate share of bonus and rental "paid in lieu of such royalty interest." The right would follow in law as appurtenant to the royalty. Our decisions are to the contrary. A royalty interest as distinguished from a mineral interest is not entitled to

share in bonus or rental, but only in production, actual or constructive. State National Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757; Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543.

The Mastersons construe their deed just as if, in respect to the minerals, they had reserved a one-half interest therein though irrevocably delegating and appointing their grantee, his executors, administrators and assigns, executive agent of the leasing power which would otherwise remain in the ownership of the minerals. In our opinion, this is a strained and unnatural construction, and in the face of the clear intent of the instrument which we consider to be plain and unambiguous.

The words "Royalty," "Bonus," and "Rentals," each and all have a separate, distinct and well established meaning in the oil and gas business. See Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543, 544, where it was said, "The words 'royalty,' 'bonus,' and 'rentals' have a well-understood meaning in the oil and gas business. * * * it is well settled that a grantor may reserve minerals or mineral rights and he may also reserve royalties, bonuses, and rentals, either one, more or all." In that case the reservation was of royalty rights. The court said, "It is obvious, it seems to us, that this does not include a reservation of bonuses or rentals, but only of an interest in oil, gas, or minerals paid, received, or realized as 'royalty' under any lease existing on the land at the time of the reservation, or thereafter executed by the grantee, his heirs or assigns."

█ Under the reservation here involved, the grantors excepted from the conveyance a one-sixteenth royalty interest, and one-half of any bonus or rental *paid in lieu or in place of that royalty interest.* Certainly there is no difficulty in determining the meaning of the reservation of the one-sixteenth royalty interest. That interest entitled the owner to a one-sixteenth share of the minerals produced from the land, or the proceeds thereof. Clearly,

a one-sixteenth royalty interest standing alone is nonparticipating in nature, and does not entitle the owner to any share of ordinary cash or other bonuses, or of delay rentals. So, the case turns on the meaning of the words "½ of any bonus or rental paid in lieu of *such* royalty interest." (Emphasis supplied.) We think the presence in the quoted phrase of the word "such" is important. The parties plainly stipulated that the bonus or rental, a portion of which the grantors in the subject deed reserved, must be a bonus or a rental paid *in place or in lieu of* the one-sixteenth nonparticipating royalty interest. It is clear from the phrase that the bonus or rental in which the grantors are to participate must be bonus or rental paid in lieu of something, and not only that but it must be bonus or rental paid in lieu of a particular something, specifically in lieu of "such" "¹⁄₁₆th royalty interest." If, as the Mastersons contend, they are entitled to a one-half interest in any and all bonus or rental paid, then the phrase "in lieu of such royalty interest" becomes meaningless as mere surplusage in its entirety. For us to adopt such construction of the language would run counter, not only to the explicit words of the reservation, but as well to those canons of construction which require us to presume that the parties to an instrument intend every word in it to have some meaning and effect—some purpose—which ought not to be thwarted, except in a plain case of necessary repugnance. Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617; Watkins v. Slaughter, Tex.Civ.App., 183 S.W.2d 474, affirmed 144 Tex. 179, 189 S.W.2d 699.

In our opinion, by the clear and unambiguous reservation in question the Mastersons are entitled to a one-sixteenth nonparticipating royalty interest, and to one-half of any sums, whether bonus or rental or however denominated, which may be paid in lieu of such one-sixteenth nonparticipating royalty interest. The parties used apt words to express that intent. We do not think it can be logically contended

that they express any other. Else, why were the parties so careful to limit and qualify the exact nature of the bonus and rentals in which the grantor was to participate by classifying them strictly as payments which might be made *in lieu* of the very one-sixteenth nonparticipating royalty interest excepted by the reservation?

It is urged that under our construction the reservation of one-half of bonuses and rentals paid in lieu of the one-sixteenth nonparticipating royalty interest is without practical effect. This contention, we think, is insupportable. There frequently arise situations in which it is thought to the advantage of the lessee either not to market production or not to fully and diligently develop. In some such cases, by stipulation in the lease, shut-in payments in the nature of minimum royalties are made. But it is not difficult to conceive of cases arising after mineral discovery where a lessee and a lessor, for their mutual benefit and to their mutual satisfaction, might see fit to negotiate for cash or other consideration to the lessor to compensate for the privilege which might be extended to the lessee of delaying marketing of oil or gas in actual production, or for delaying diligent development after mineral discovery. In such cases, absent express provision therefor, the owner of a nonparticipating royalty interest might not have a *clear* and *incontestable* right to participate in such bonus or rentals or other payments. Here, in our opinion, the grantor had in mind such situations and contracted to avoid controversy and to protect himself should they arise.

The Mastersons say they are entitled to their share of the bonus payment even if their reservation is not broad enough to include rentals. This contention is based on the proposition that the phrase "paid in lieu of such royalty interest" qualifies rental only, but does not qualify bonus. This in our opinion is a strained, insupportable, and unnatural construction of the language used by the parties. Compare Harriss v. Ritter, 154 Tex. 474, 279 S.W.2d 845. Alternatively, the Mastersons say that if only we would insert a comma after the word "bonus," then they would become entitled to one-half of bonus payment because then the phrase "paid in lieu of such royalty interest would modify rental alone." Why we should do this when the parties did not, to change what is otherwise to our minds plain and unambiguous language, we are not told. We overrule these contentions.

We feel the language of the reservation is plain, clear and unambiguous. It reserves a one-sixteenth nonparticipating royalty interest in the minerals and one-half of whatever consideration may be paid *in lieu of* "such royalty interest."—that is to say, the one-sixteenth nonparticipating reserved royalty interest. Under the lease here involved, the Masterson's one-sixteenth nonparticipating royalty interest remains unimpaired. It is in no wise displaced, diminished, curtailed, suspended, or avoided, and nothing has been or is to be paid "in lieu" of it. This being true, we know of no theory under which the Mastersons may recover any part of the cash bonus paid for the execution of the lease and for the privilege of exploration and development, or of the annual delay rentals paid for the privilege of deferring drilling obligations. No part of any of such payments was made in lieu of the one-sixteenth royalty interest reserved by the Masterson deed unless, as contended by the Mastersons, *all* bonus and *all* rental is, as commonly understood in the oil industry, but a substitute in lieu of royalty. In our opinion, the substance of the contention has been ruled against the Mastersons in numerous Texas cases, including Schlittler v. Smith, supra; State National Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757, and Morriss v. First National Bank of Mission, Tex.Civ.App., 249 S.W.2d 269.

The judgment of the trial court is affirmed.